it in carrying out the direction of his employer to go into the building for the stove. His vision to the south when he came out of the building was thus obstructed by his own act; but, even assuming that some one else had opened the door, his manifest duty, when he left the building and started to go south, was to look and see whether the track was clear. This he could readily have done by closing the door or pushing it against the building. Instead of exercising this ordinary prudence, which would have given him a clear view to the south, he did not even stop to look before passing around the door, but went south several feet, with the engine almost upon him. With his knowledge that it projected beyond the rails, he took the risk of being crushed by it when he pressed himself against the wall. He heedlessly placed himself in a position of danger, which he could have avoided by the exercise of but ordinary care when he left the building.

Judgment affirmed.

---

# Neafie's Estate.

*Res adjudicata—Orphans' Court—Decedent's estates—Testamentary trustee—Sale of realty—Surcharge.*

1. Where a decree of the Orphans' Court removing a testamentary trustee on the ground that one of the cestuis que trustent had lost confidence in him as the result of his having made a certain unprofitable sale of real estate, is reversed by the Supreme Court on the ground that the sale was properly made, the question as to the propriety of such sale is res adjudicata and the court does not err in refusing to surcharge the trustee for the amount of the loss alleged to have resulted therefrom.

*Trusts and trustees—Commissions.*

2. The allowance of a testamentary trustee's commission upon income is proper where it appears that the amounts of such commission were stated and charged in the accounts rendered to the cestui que trust from time to time, without objection on her part. So long as the accountant remains in his office as executor and

performs the labor of his office without being given any reason to suppose that he was not to be compensated therefor, he should be allowed the usual commission for sales of real estate that were allowed in prior accounts.

Argued April 29, 1914. Appeals, Nos. 377, 378, and 379, Jan. T., 1913, by Mary E. Whitaker, J. G. Neafie Whitaker and Anna W. Mitchell, from decree of O. C. Philadelphia Co., Jan. T., 1899, No. 136, dismissing exceptions to adjudication in the matter of the estate of Jacob Neafie, deceased. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Appeal from adjudication.

The facts appear in Neafie's Estate, 199 Pa. 307, and in the following opinion of the lower court by GEST, J.:

The core of this case, the center about which everything revolves, is the contract made by the executors on March 29, 1898, for the sale to Somers N. Smith of the testator's shares of stock of the Neafie & Levy Ship and Engine Building Company. The exceptants seek to surcharge the accountants with the par value of the bond of Somers N. Smith, the purchaser, or rather the two-thirds thereof belonging to this estate, which is now worthless, but carried among the assets at a valuation of $270,000, on the ground that said sale of the stock by the executors to Smith (whose bond represents the purchase money) was an unauthorized investment, for making which the executor and for continuing which the trustees are responsible. The principal contention is whether this act of the executors was done in the exercise of a sound discretion and by lawful authority. But we do not think the matter is debatable, inasmuch as the Supreme Court passed upon it in Neafie's Estate, 199 Pa. 307. There the life tenant, one of the present exceptants, sought to have the executor removed as trustee

under the Act of April 9, 1868, P. L. 785, Stew. Purd. 4893, alleging her want of confidence in him as a result of his having made this very sale. This court dismissed the trustee and its decree was reversed by the Supreme Court in an elaborate opinion by Mr. Justice MESTREZAT, who concluded that the trustee had done what his duty required him to do and what the interest of the estate committed to his care demanded of him.

It is argued by the learned counsel for the exceptants that express authority to make this sale was not given by the court to the executors and the sale itself was only incidentally considered by the Supreme Court. We cannot agree with counsel in this, as our examination of the record leads to the exactly opposite conclusion. There were, it is true, other grounds of dissatisfaction alleged, but this one would have been vital had the Supreme Court considered it substantial; and it may be that the subsequent history of the case shows that the sale was unfortunate, but that is not to the point. We are of the opinion that this court cannot now hold the executor and trustee blameworthy for having done that which the Supreme Court, shortly after it had been done, held to have been proper.

If this is true in the case of the trustee, who, as one of the executors, made the contract, it is true a fortiori in the case of the cotrustee subsequently appointed. This trust company had absolutely nothing to do with the making of the contract, and we fail to see what could have been done by it to better the situation that was presented. It was a condition and not a theory that confronted it. There is no sufficient evidence to show that anything could have been done by the cotrustee which would have averted the ruin of the Neafie & Levy Company, which, as the auditing judge finds, was due, at least chiefly due, to its undertaking to build ships at a price below their actual cost. The retention of the Somers M. Smith bond as an "investment" of the estate was unavoidable, for the obvious reason that the trustees

could not have disposed of it. Thus retained, the asset was not marketable. There was no testimony to show that any purchaser could have been found for it. Indeed, it would be difficult to imagine such a possibility, and the evidence shows that up to the time of the receivership of the company the trustees collected all that was due on the bond.

We have not thought it necessary to discuss in detail many other matters of less importance elaborated by the learned counsel for the exceptants in their able and forcible argument, for, as stated by us in the beginning, they all depend directly or indirectly upon the contract of March 29, 1898. We have, however, examined them, in the light of the testimony presented at the audit, and entirely agree with the findings of fact as stated by the auditing judge and his conclusions of law applicable thereto. So far as the allowance of the trustees' commissions upon income is concerned, it appears that these were stated and charged in the accounts rendered to the life tenant from time to time without objection on her part. The auditing judge accordingly held that it was too late for her afterwards to object, and we think that his views are sustained, not only by the reasons which he has given, but by the opinion of Judge HARE, in Lodge v. Heron, 3 Philadelphia, 356.

The exceptions to the adjudication of the fourth account of the executor relate to the allowance made to him of commissions at the rate of three per cent. upon the sales of real estate. We are of opinion that under the circumstances of the case the auditing judge was right in refusing to strike them from the account. So long as the accountant remains in his office as executor and performs the labor of his office without being given any reason to suppose that he was not to be compensated therefor he should be allowed the usual commissions that were allowed him in prior accounts. The auditing judge however, has left open the question of the allowance of commissions on future sales.

We are not inclined to think that a recommitment of the account of the trustees to the auditing judge and its postponement until the final decree of the Supreme Court in Cornell v. Seddinger would result in any revision of our opinion, and the petition is dismissed.

The court dismissed the exceptions to the adjudication. Mary E. Whitaker, J. G. Neafie Whitaker and Anna M. Mitchell appealed.

*Error assigned* was, among others, the decree of the court.

*George Quintard Horwitz,* and *Max L. Mitchell,* for appellants.

*John G. Johnson,* with him *Eli K. Price* and *Maurice Bower Saul,* for Matthias Seddinger, appellee.

*John G. Johnson,* with him *Edward H. Bonsall* and *Maurice Bower Saul,* for Land Title & Trust Company, appellee.

PER CURIAM, May 22, 1914:

The decree appealed from is affirmed on the opinion of Judge GEST.

---

# Downer's Estate.

*Wills—Construction—Intention—Equitable conversion—Next of kin.*

Where a testatrix, after making a specified bequest, appoints an executor "with power to sell as he may think best any realty of which I may die seized, to execute deeds therefor, and to make distribution of the proceeds thereof as personalty, and of all personalty of which I may die possessed to those legally entitled thereto according to the intestate laws of the State of Pennsyl-