# O'Neill's Estate.

*Executors and administrators—Accounts—Legacies—Objections by legatees—Wills.*

1. Legatees are entitled to object to credits claimed in a pending account, where it does not appear from the account itself that they will receive their legacies even though the credits are allowed.

2. Proof that an estate is solvent and that legacies will be paid on a future accounting, will not operate to defeat their right to object.

*Executors and administrators—Credits—Payment of liens and debts—Premature payments—Legatees.*

3. As between an executor and legatees, the former will be refused credits for sums paid for existing liens upon a property devised subject thereto, possession of which he has given to the devisee without first compelling their payment.

4. When debts are to be first paid out of collections to be made, and are still unpaid, an accountant will be refused credit for sums paid by way of distribution to those entitled to receive the residue after payment of the debts.

*Executors and administrators—Commissions—Misconduct.*

5. An executor of experience, who constantly violates his letters testamentary and oath of office, yet distributes large sums though the debts and taxes are unpaid, and who fails to comply with the terms of the will, will be refused commissions, notwithstanding the will provides he shall control and manage the estate to the best of his ability.

*Wills—Construction—Meaning of words.*

6. A will is to be construed according to the meaning of the words actually used therein.

7. Where testatrix devises realty subject to the payment of "liens," it cannot be shown by oral evidence that testatrix meant "one mortgage" only.

*Appeals—Findings of fact—Review.*

8. The court will not reverse findings of fact which are based upon statements of appellant, or unless clear error is shown.

Argued October 14, 1919. Appeals, Nos. 126 and 127, Oct. T., 1918, by Edward L. Kearns, Executor, and Edward L. Kearns, Trustee, from decree of O. C. Allegheny Co., Dec. T., 1915, No. 95, dismissing exceptions to adjudication in Estate of Mary J. O'Neill, deceased. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Exceptions to adjudication. Before TRIMBLE, J.

The court dismissed the exceptions to the adjudication. Edward L. Kearns, as executor and as trustee, appealed.

*Errors assigned* were in dismissing exceptions to adjudication.

*John C. Bane,* for appellant.

*John N. Dunn,* of *Dunn & Moorhead,* with him *W. S. Thomas,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, January 5, 1920:

The testatrix, Mary J. O'Neill, died June 26, 1910, leaving a valuable estate, out of which debts aggregating more than $56,000 should have been paid before her legatees received anything. By her will, which was duly probated July 1, 1910, she directed payment of her just debts "as soon as convenient after my decease"; she gave $500 for masses for the repose of her soul, she bequeathed the personal property in her residence to various relatives, she devised the Hotel Battaglia prop-

erty to her brother for life, with remainder to his three children, one of whom is appellant, "this devise being made subject to the payment by the devisee of the existing liens against said property"; and by the residuary clause of her will she vested the control and management of her estate in appellant, as her executor and trustee, "for a period not to exceed five years," he to receive the rents and income thereof and to pay the taxes, interest, repairs, alterations and improvements thereout, and the balance, if any, to his, appellant's father, and directed that the real estate "shall be converted into money as soon as may be done advantageously after my decease, but in no event to exceed the period of five years after my decease," and upon the sale of the property she directed that certain legacies, aggregating $87,500, should be first paid thereout,—$35,000 thereof being to the appellees in this case,—and the residue of the residue she gave to her said brother for life with remainder to his said three children.

After the probate of the will appellant turned over the Battaglia Hotel property to his father, and delivered to the several legatees the personal property in her residence. On January 12, 1911, he collected the sum of $7,323, on the sale of a judgment against the City of Pittsburgh; on December 18, 1913, he collected $11,000 on the sale of another judgment against the city,—each having been recovered in proceedings for change of grade in front of decedent's property,—and at various times other sums, the whole aggregating $32,080.57, not including, however $4,500, which he admits he owes the estate. He paid the funeral expenses and a number of other items, some of which were on distribution account, but did not pay the debts or certain taxes on the properties, nor the collateral inheritance tax of $4,375, upon which interest was running at the rate of twelve per cent per annum from June 26, 1911. After the expiration of five years, in response to a final decree following a citation to file his account, he filed one which

blended principal and income, administration and distribution, and items belonging in the executor's account with those belonging in the trustee's account. The court ordered him to file proper accounts in lieu thereof. In response thereto he filed two accounts, one as executor and the other as trustee, and these the court below says blended principal and income almost as badly as the earlier one. Exceptions were filed to certain items in the two accounts, some of which were sustained, and appellant surcharged; exceptions filed by him because thereof were dismissed and decrees of distribution entered, whereupon he prosecuted these appeals.

The first question raised by the appellant is whether or not appellees had any standing to except. The basis of his objection is that the estate is solvent, and they will receive their legacies when the real estate is sold, whether or not these surcharges are allowed. For this there is nothing but his say-so. It would be immaterial, however, even if other witnesses so testified, for until there is a fund on hand sufficient to pay legatees, they have the right to except to any credits in a pending account, and are not obliged to take the chances of future collections. They are entitled to be paid out of the first funds which ought to be available for the purpose, and to object to any credits which wrongfully stand in the way of their availability at the earliest moment. Appellant next objects because the auditing judge surcharged him with certain sums of money, being payments on account of the principal and interest on a mortgage for $2,500, on one of decedent's properties. He admits that he owes this amount of money to the estate, but says it is not represented by this mortgage. He admits also he wrote to some of the parties in interest, before he filed his accounts, that this mortgage was his debt and they had acted upon his statement in that regard. In view thereof he can hardly expect us to reverse the court below for finding as a fact that which he

had thus written, at a time when he had no interest to state other than the truth.

Appellant also objects because he was surcharged with the amount of certain taxes paid by him on the Battaglia Hotel property, which he had turned over to his father in accordance with the provisions of the will. He admitted at the audit that these taxes were existing liens against the property at testatrix's death, and hence the surcharge was clearly right, for the will specifies "this devise being made subject to the payment by the devisee of the existing liens against said property." His explanation of their payment is that "the provision in the will was made at my suggestion, and was to cover the $11,000 mortgage, due at that time only." If we assume this statement to be true, it will not help appellant, for one mortgage cannot be "liens"; and we cannot determine testatrix's meaning other than from the words actually used by her: Hancock's App., 112 Pa. 532; Peterson's Est., 242 Pa. 330, 340.

Appellant also objects because he was surcharged with two items of costs, amounting to $35.48, on tax liens filed against one of the properties of the decedent, and to interest on deferred payments of interest upon a $35,000 mortgage on some of the estate properties. It was admitted in the testimony that on January 12, 1911, he had collected $7,323, yet he allowed the taxes and interest to get in arrears and liens to be filed for the taxes. He says he had no money of the estate with which to pay them before he did, but his failure to have it was due to his wrongful payments to distributees, particularly his father, without first paying these prior claims.

Appellant also objects because he was surcharged with the sum of $6,000 paid to his father as a distributee under the will, and with interest thereon. The court below rightfully held the payment to be improper at that time, because the debts and collateral inheritance and other taxes were still unpaid, and the will provided that they should be paid before the father received anything.

If the payments to his father were made out of the moneys collected from the City of Pittsburgh in the change of grade proceedings, appellant is no better off, for the sums thus collected were principal, because they represented depreciation of the principal of the estate, and hence from this viewpoint also it was error to pay the money to distributees until the debts were paid.

Appellant assigns as error also the refusal to allow him a credit in excess of $3,000 for professional services as attorney for himself as executor and trustee. The only items of collections about which there is definite testimony as to the value of his services, is the sum of $7,323, for which his expert witness said he was entitled to $2,000 counsel fee, and the sum of $11,000, for which the same witness said he was entitled to at least $2,500 to $3,000. As already stated these were proceedings before a board of viewers to collect money for damages to property by change of grade. The cases were not tried in court, but were settled after appeals had been taken. There is nothing in this record showing any excessive work done by him as counsel in these matters, and under such circumstances the fees suggested by the expert would seem to be exorbitant. When appellant was asked to specify the other legal services he had performed, in order, as the court said, to give "me any facts upon which I can base a judgment," he answered: "Well, I can't tell you just now. I know I devoted a great deal of my time to it, the majority of my time to it"; and there the matter was left. Moreover, the value of the legal services being a question of fact, and clear error not being shown in fixing the allowance at $3,000, the assignments of error will not be sustained: First National Bank of Pittsburgh v. McKinley Coal Co., 210 Pa. 76.

The final objection is to the refusal to allow appellant any commissions. As has already been stated, appellant distributed a large portion of the estate without paying its debts, or the collateral inheritance tax which was

bearing interest at the rate of twelve per cent per annum and by reason thereof had nearly doubled in amount; he made no effort to convert the land within five years, as directed by the will; he failed to promptly pay the interest upon decedent's mortgages; so far as appears he made no attempt to pay his own indebtedness to the estate; and he failed to diligently proceed to wind up the estate as by both the law and the decedent's will he was required to do. It is impossible to read the testimony without concluding that he thought he could do as he pleased with the estate, simply because he is given the power to "control and manage the estate to the best of his ability for a period not exceeding five years from the date of my decease." The auditing judge was not required to believe such gross negligence as this record shows was managing the estate "to the best of his ability." According to the averment in his paper-book in this court, he is a "lawyer of large experience"; he knew his obligations to creditors and to the Commonwealth in relation to the collateral inheritance tax. He knew his duty to the distributees, and that the legacies coming to them ought not to be delayed because of interest and costs upon debts and taxes which he did not promptly pay. His letters testamentary required him to "render a just and true account of said administration in one year from the date thereof," and to "regard and comply with the provisions of the law relating to collateral inheritance tax," and so did also his oath of office as executor; and yet, though he violated the requirement of the letters and broke his oath of office, he is complaining because the court below did not reward him as a faithful fiduciary. In so doing we cannot sustain him. In Miller's Est., 264 Pa. 310, under substantially similar facts, we affirmed a decree summarily dismissing an executor from his office, and appellant here cannot justly complain when less drastic action was taken in his case.

The decrees of the court below are affirmed, and the appeals dismissed at the costs of the appellant.