## Lutz's Estate

*Rocco C. Falvello,* for accountant.
*C. A. Whitehouse,* for exceptant.

GANGLOFF, P. J., February 10, 1941.—Henry A. Lutz died on January 7, 1927, testate. This was obviously 14 years ago. His will was duly probated and on January 29, 1927, letters testamentary were issued to the executor in the will named, the accountant here. . . .

Emma Baum, the only legatee who did not join in the family agreement, filed six exceptions to the account. In the first of these she objects to the credit item in the account of $150 paid to the accountant as attorney for services rendered in the collection of the John Scott note; in

the second, she objects to the credit item in the account of $100 paid to the accountant as attorney for services rendered in the collection of the Daniel Stauffer judgment; in her third exception she contends that the credit item in the account of $443.15 for commissions to accountant includes commissions upon various notes held by decedent against legatees and upon which he is not entitled to commissions; in the fourth exception she objects to a five percent commission, or $450, taken by the accountant upon the proceeds of $9,000 realized from the sale of the real estate, claiming that he is entitled to but three percent; in her fifth exception she objects to the credit item in the account of $80 paid to accountant as attorney for drawing four executor's deeds; and in her sixth and last exception she contends that the accountant should be allowed but five percent on rents of $350 collected instead of ten percent, or $35, paid to him and for which he claims credit in the account.

Thus it will be seen that the exceptions are complaints against payment of attorney fees to the accountant and against the amount claimed as commissions. As to the latter, the contention in substance is that the commissions taken are excessive. As to the former, the contention is that the accountant cannot claim counsel fees when he at the same time claims commissions.

The accountant is a lawyer. In the administration of this estate he was not only the executor but he also performed such legal services as were required. At the audit hearings he was represented by counsel but otherwise it seems that the general administration of the estate was carried on by the accountant alone in the dual capacity of executor and attorney. Except for the item of $100 deducted in the account for "stating the account", there are no other charges by way of expenditures for legal services, except the three items to which exceptions are filed.

An exhaustive discussion, including an analysis of authorities, of the right of an executor who is a lawyer to claim fees for professional services rendered in the estate

in which he is the executor and receives commissions in the latter capacity will be found in Eckels' Estate, 37 D. & C. 383. There Judge Holland reaches the conclusion (so far as here applicable) that (p. 395) :

"A lawyer who is the sole fiduciary cannot take commissions as fiduciary, and a fee as attorney, for the ordinary and routine work done as attorney to the fiduciary. He must choose between the two. But, even if he is the sole fiduciary, he may take his commissions as such and receive also an attorney fee for *extraordinary* services."

Now, as to extraordinary services, the question is, where is the dividing line between ordinary and routine work and extraordinary services? In Perkins' Appeal, 108 Pa. 314, one of the supporting cases cited in Eckels' Estate, exception was taken to a credit item in the trustee's account "for compensation as trustee, $1,500." This item was for services both as trustee and as an attorney, the trustee having been both. The court said at page 318, in reference to this exception:

". . . the learned Auditor found, from the testimony before him, that in view of the services, of a strictly professional character, rendered by appellant, in connection with his duties and responsibilities as trustee, the compensation claimed by him was just and reasonable; and this conclusion of fact appears to have been warranted by the evidence." Then again, at page 319, the court said:

"If professional services, necessary to the proper administration of the trust, have been rendered by a trustee in person, he is clearly entitled to such reasonable compensation as he would have paid had he been obliged to employ counsel."

In O'Neill's Estate, 266 Pa. 9, the appellate court approved the payment of $3,000 for professional services to an attorney for services rendered to himself as executor and trustee. In this latter case commissions were denied but upon the ground of misconduct in his office as executor and trustee. In Griffith's Estate, 96 Pa. Superior Ct. 242, also cited in Eckels' Estate, supra, exception

was taken to a credit item in an executor's account of $27,500 for commissions and attorney's fee. The accountant was sole executor and was a lawyer. At the audit the accountant divided the item into $20,000 counsel fee and $7,500 as commissions. The lower court allowed $17,500 for counsel fees but did not disturb the $7,500 for commissions. The appellate court affirmed and it seems apparent that in so doing the appellate court also took into consideration the amount allowed as commissions, for, on page 244, it is said:

"The court evidently considered that the charge of $2\frac{1}{2}\%$ as commission was low and that this justified a more liberal consideration of the claim for counsel fees."

The application of the general rule formulated in Eckels' Estate, supra, may lead to difficulties. Under that rule an executor who is a lawyer and who performs services which are commonly accepted among lawyers as "the practice of the law", but which services are merely routine for a lawyer in the settlement of an estate, is not entitled to compensation other than commissions as an executor. A layman executor who has had experience in the settlement of estates might contend with some degree of logic that, since routine duties of a lawyer are to be treated as part of the executor's duties, for which no compensation is to be allowed other than commissions to the executor as such, he, a layman, may perform these routine duties even though he thereby engages in the practice of the law. Here are the seeds of a head-on collision with the current agitation against the practice of the law by laymen. We prefer to follow what we believe is the rule indicated in Perkins' Appeal, O'Neill's Estate, and Griffith's Estate, supra. In these three cases it seems to be apparent that an attempt was made to distinguish between services which only a lawyer can or should perform in the administration of a decedent's estate and services of an executor as such. Simply stated, the rule then is that where the sole executor is a lawyer he may, if he makes claim therefor, be allowed reasonable compensa-

tion, in addition to his commission as executor, for such services as a lawyer would have been called upon to perform had the executor not been a lawyer. In effect, this means that the practice of the law is to be recognized as such and is to be compensated for as such.

Now in the case at bar we may view the services of the executor as a whole, as was done by both our appellate courts in the cases cited. The executor claims as counsel fees a total of $330. He claims commissions aggregating $941.75. The gross personal estate principal is $3,475, to which the accountant adds, as he must under the will, the advancements mentioned in the will having an aggregate total of $15,388.51. The accountant was merely required to throw these advancements into hotchpot and adjust the shares. He is not entitled to commissions on these advancements except by agreement of the parties in interest: Barhite's Appeal, 126 Pa. 404; Herter's Estate, 18 Dist. R. 1026. In the absence of extraordinary services, which have not been shown to exist here, an executor is entitled to the usual five percent commissions upon an estate of this size. At this rate his commissions upon personalty principal would be $173.75.

In the personalty income account $13.60 is claimed and there is no objection to that amount.

In the real estate principal account a five percent commission upon real estate proceeds of $9,000 is claimed, a total of $450. As already noted, this is objected to. Equitable conversion does not justify more than the usual rates of commission: Sharp's Estate, 9 Dist. R. 727; Knoppel's Estate, 3 D. & C. 707. The usual rate of commission in the sale of real estate by a fiduciary is three percent of the proceeds: Moore's Estate (No. 2), 211 Pa. 343; Harrison's Estate, 217 Pa. 207; Neafie's Estate, 245 Pa. 576; Mendenhall's Estate, 97 Pa. Superior Ct. 582; Remaley's Estate, 21 Schuyl. L. R. 9. There is no testimony which would indicate anything unusual or extraordinary in the sale of this real estate, hence the usual rate should prevail. The executor's commission on real estate principal should therefore be $270.

The remaining commission item is $35 claimed upon $350 in rents collected. Objection is entered to this also. The account itself by way of explanation calls for five percent only. The latter is the usual rate. There is no testimony to show unusual circumstances. It is true the accountant claims he collects rents that are not reported in his account and for which he did not collect commissions. However, he could have collected and his failure to collect out of those rents can have no bearing upon the commissions to be allowed on the $350 reported in the account. The usual rate is applicable and the amount therefore should be $17.50 instead of $35.

According to our fee bill, the minimum fee to counsel for an executor is $110 where personal estate amounts to $3,475 and $250 where there is a sale of real estate with proceeds $7,500 to $10,000. Therefore, the minimum fee for the services required of a lawyer in an estate of the size here considered would be $360. The administration of this estate covered a period of approximately thirteen years, five of which were for the life tenant. But from 1932 to 1939, when the last of the real estate was sold, the duties of the executor were not overly exacting. But one piece of real estate remained in his hands. This was sold in 1939 to exceptant and her husband. Testator charged the executor with the duty of adjusting certain water rights. This duty was carried out and required several trips to our county seat to obtain data from the records. More than once, but how often is not disclosed, the executor prepared affidavits preliminary to entering suit for collection of the Scott note for $1,300. At no time was suit entered and settlement was finally made for $1,000. The Stauffer judgment was revived once and a scire facias seems to have been necessary. Beyond these, there is nothing in the evidence to show the performance of professional services other than such as are usually necessary in an estate of this size and character. Expert witnesses were not called, hence we must be guided by the

fee bill. The minimum is $360 as stated above. We shall allow $500. This seems to be reasonable under the evidence and with the commissions is aggregate compensation of $974.85.

We therefore allow $500 for services as a lawyer. . . .