## Gernert Estate

*Charles G. Helwig,* for accountant.

*Charles M. Bolich* and *John L. Cutshall,* for specific legatees.

GEARHART, P. J., July 10, 1951.—This dispute centers about the question of whether the bequest of $2,-000 to Oliver H. Gruver and the bequest of $10,000 to Gerald Reed are payable out of the general estate of this decedent, or whether the bequests are limited to and solely payable out of a trust fund created in decedent's lifetime and set up as a collateral fund to guarantee payments of support to decedent's wife. While the problem primarily is one of the construction of the will, it necessarily requires an examination of the trust agreement to which the will refers.

The following facts are pertinent: Testator and his wife, Laura B. Gernert, had no children. Upon their

separation they entered into a trust agreement on December 3, 1908. Under the terms of the trust agreement testator deposited with the Citizens Deposit and Trust Company, trustee, the predecessor of the present accountant, assets in the amount of $8,000 as security for the proper payment to his wife, Laura B. Gernert, of the yearly sum of $600. Testator kept this agreement during his lifetime. He received the income of the trust fund until his death.

Since testator's death, which occurred on October 12, 1937, his estate continued payment of the $600 to his widow until her death, which occurred on December 31, 1950. The trust fund, now in the amount of $8,-598.88, has been paid to the accountant-executor. There is a total balance for distribution in the estate of $57,158.

In the trust agreement testator reserved the right to dispose of the trust res by last will and testament or by any other writing.

The pertinent portions of decedent's will dated June 29, 1937, are items 1, 2, 3 and 4 thereof, which read as follows:

"Item 1. I give, devise and bequeath the sum of Two Thousand ($2,000.00) Dollars, to Oliver H. Gruver, of the City of Allentown, Lehigh County, Pennsylvania.

"Item 2. I give, devise and bequeath the sum of Ten Thousand ($10,000.00) Dollars, to Gerald Reed, of the City of Allentown, Lehigh County, Pennsylvania.

"Item 3. The bequests contained in Items one and two of this my Will, are not to be effective, should either Oliver H. Gruver or Gerald Reed predecease me in death. If either of them shall predecease me in death, then the amount that I have bequeathed to each one of them, I give, devise and bequeath to the Allentown Hospital Association. The bequests I have made to them,

are personal bequests, and shall not extend to their heirs.

"Item 4. The bequests contained in Items one, two and three, in no event, however, shall become effective, until the trust fund, now held by the Merchants National Bank of the City of Allentown, Lehigh County, Pennsylvania, shall terminate, and be turned over to my hereinafter named executor and trustee. If, however, the said Trust Fund shall terminate during my lifetime, then said bequests hereinbefore stated, are not restricted to the Trust Fund, but shall be paid out of my general estate."

Item 4 of the will is the source of dispute, particularly the sentence: "If, however, the said Trust Fund shall terminate during my lifetime, then said bequests hereinbefore stated, are not restricted to the Trust Fund, but shall be paid out of my general estate".

The children of George and Alice Christians take one half of the residuary estate, less certain pecuniary bequests after the death of Emily S. Kress, which has occurred. They contend that the legacies given in items 1 and 2, aggregating $12,000, must be paid out of the trust fund received by the accountant in the amount of $8,598.88. The two named legatees contend otherwise, and insist that the full amounts of their legacies are payable out of the general fund.

It has been repeatedly held that in expounding a will, the intent of testator is the polar star (Woelpper's Appeal, 126 Pa. 562; Scott's Estate, 313 Pa. 155; Prime's Petition, 335 Pa. 218), and that the intent of testator must be gathered from the meaning of the words he has used: Ludwick's Estate, 269 Pa. 365; Loughran's Estate, 144 Pa. Superior Court 88; O'Neill's Estate, 266 Pa. 9. And, of course, the question is confined to the meaning of what testator has said, and does not extend to the consideration of what he might have said, but did not: Nebinger's Estate, 185 Pa. 399. And a

will construction is never to assume the proportions of reformation: DeSilver's Estate, 142 Pa. 74; Jacobs' Estate, 343 Pa. 387.

It is also a rule of construction that words employed must be read in their ordinary and grammatical sense, unless some obvious absurdity or some repugnance or inconsistency with the declared intention of testator as extracted from the whole will should follow from so reading it: Riegel et al. v. Oliver et al., 352 Pa. 244, 247, and cases cited. It was said in the latter case:

"Where words used might under a given construction lead to a result which is highly improbable, the court will lean toward a construction that will carry out the natural intention of the testator".

While primarily the intention of testator is to be gathered in the first instance from the language used in the will, this intention cannot be ascertained from such language alone: Page on Wills, lifetime ed., vol. 2, sec. 920. The surrounding circumstances, as known to testator, and with reference to which he wrote his will, must be considered in discovering testator's intention: Yates' Estate, 281 Pa. 178; Conner's Estate, 346 Pa. 271.

With these principles as a guide, we will examine the will in question. As indicated, items 1, 2, and 3 give us no trouble. In items 1 and 2 the two legatees receive absolute gifts with no restrictions whatsoever. Item 3 makes it clear that the gifts are personal to the named legatees and in the event of their deaths during the lifetime of testator, the "amount" of the gifts is bequeathed to the Allentown Hospital Association. After writing items 1, 2, and 3, testator remembered that he had obligated himself and his estate to pay to his wife the sum of $600 annually as long as she lived. He therefore provided that the bequests contained in items 1 and 2 should not be payable ("effective" is the word he

used) until the trust terminated and the corpus was turned over to "my hereinafter named executor and trustee".

Having said that the legacies could not become effective until the fund was turned over to his executor and trustee, testator probably realized that event might never occur, for by the provisions of the trust agreement, if his wife died in his lifetime, the corpus was payable to testator. Thus, if testator had stopped at this point in his will, it could be contended that had the trust terminated in the lifetime of testator, the provisions of items 1 and 2 would have fallen. Clearly, from a reading of the entire will, this the testator did not intend. Knowing that the trust fund might be paid to him during his lifetime, and in order to obviate any question concerning payment, testator then wrote the last line of item 4, stating that if the trust terminated in his lifetime, the "said bequests hereinbefore stated are not restricted to the Trust Fund, but shall be paid out of my general estate". He did not expressly say that in the event the trust terminated after his death the legacies should be paid out of the proceeds of the trust fund.

It must be conceded that the last sentence of item 4, standing alone, might lend itself to the implication that in the event the trust did not terminate until after the death of testator, the legacies should be paid solely out of the trust fund. However, in finding the intention of testator, the entire will must be considered and the declared intention of testator as extracted from the whole will must govern: Riegel v. Oliver, supra, and cases cited.

In our judgment, the last sentence of item 4 must be read in connection with the sentence immediately preceding it, for it was in that sentence that testator made reference to the trust fund for the first time. The gifts in items 1 and 2 were absolute without restriction. His

reference to the trust fund in the first sentence of item 4 was merely to restrict the time of payment of the bequests in the event the trust fund was not paid to him during his lifetime. To preclude any ambiguity that might have been caused by this sentence, he followed with the next sentence. And that sentence, as we read it in context, means that in the event of the termination of the trust during testator's lifetime, the payment of the pecuniary bequests is not postponed.

The words "not restricted to the Trust Fund" have reference to the limitation of payment imposed by testator in the preceding sentence, i.e., "until the trust fund . . . shall terminate". If the trust terminated in testator's lifetime, the payment of the gifts was "not restricted to [payment of] the trust fund". The context would indicate that when testator used the word "restricted", it had reference to time of payment rather than the source of payment.

In Heck's Estate, 170 Pa. 232, it was said: "The best that can be said for the fourteenth clause is that it *may* make the tenth clause doubtful; but under all the authorities since Pennock's Estate, 20 Pa. 268, this is not enough. 'An absolute gift, especially of personalty, is not to be cut down by a later clause, unless the testator's intention to modify the gift is unequivocally expressed'."

By the same token, the most that the last line of item 4 accomplishes is to raise the question of whether the gifts contained in the earlier items are to be restricted for payment to the trust fund. This, under the decisions, is not sufficient to cut down the clear gift earlier given. See Rapson's Estate, 318 Pa. 587; Lerch's Estate, 309 Pa. 23, 27; Klinger's Estate, 17 Dist. R. 126, 127.

In Teller's Estate, 215 Pa. 263, which was affirmed on the opinion of Judge Penrose of the Orphans' Court

of Philadelphia County, in the opinion of the court below it was said:

"It is a canon of interpretation that a clear gift by will or codicil will not be cut down by subsequent words or codicil except to the extent which, with equal clearness, is thus indicated: Whelen's Estate, 175 Pa. 23".

Plain and distinct words are only to be controlled by words equally plain and distinct: Sheetz's Appeal, 82 Pa. 213, 217; Lefebvre v. D'Arcy, 236 Pa. 235, 238, 239.

And in the instant case we do not find that the language of the last sentence of item 4 is of such clarity as to modify the clearly expressed gifts contained in items 1 and 2.

It seems to the writer that the manifest intent of testator was to give the two named legatees the aggregate of $12,000 without confining it to the trust fund. The reference to the trust fund was belatedly brought into the will only to indicate that the bequests should be postponed until the termination of the trust. The necessity of the situation required this, for as has been indicated, testator had obligated himself and his estate to pay $600 annually to his wife as long as she lived. It has been said that the law will impute to a testator's words such a meaning as under all the circumstances will conform to his probable intention and be most agreeable to reason and justice: Riegel v. Oliver, supra, and cases cited.

We think the construction we have placed upon testator's words does conform to his probable intention as manifested throughout this will.

Accordingly, we now rule that the bequest to Oliver H. Gruver in the amount of $2,000, and the bequest to Gerald Reed in the amount of $10,000, are payable out of the general estate.