Marshall Estate.

Argued October 6, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Saul J. Bernstein,* with him *Adolph Zeman,* and *Zeman and Zeman,* and *Bernstein and Campbell,* for appellant.

*Lee C. McCandless,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, March 28, 1961:

On March 15, 1948, Eileen Marshall was appointed by the Orphans' Court of Butler County as guardian for Paul Marshall, then a minor aged nine years.[1] The Employers' Liability Assurance Corporation, Ltd., [bonding company] filed a $11,000 guardian's bond for Eileen Marshall; the condition of this bond was that

---

[1] At the same time, Eileen Marshall was appointed guardian for Paul E. Marshall's eight minor brothers and sisters.

Eileen Marshall would file triennial accounts of her guardianship and any other accounts required by the Orphans' Court of Butler County, that she would deliver up her ward's property in accordance with any decree or order of the court and that she would in all respects faithfully perform the duties of guardian.

On November 4, 1948, the guardian filed a first and partial account wherein the assets of the ward's estate were set forth as $17,748.81, credits were claimed of $9,010.11 and a balance shown of $8,738.70.[2]

On July 12, 1954, the bonding company petitioned the Orphans' Court of Butler County setting forth that the guardian, although requested, had failed to file triennial accounts and had failed to cooperate with the bonding company or give it any information as to the corpus, or investments of the corpus, of the ward's estate. The bonding company asked the court to discharge it from any further liability on its bond or, in lieu thereof, to require the guardian to file an account within ten days and to display the estate assets for examination to the bonding company's representative or someone appointed by the court. Pursuant to that petition, the court granted a rule on the guardian and after a hearing (at which the guardian did not appear), President Judge SHUMAKER on July 23, 1954 found the following facts, inter alia: (1) that the guardian had failed to file triennial accounts; (2) that the guardian had failed to cooperate with her bonding company; (3) that the guardian had failed to cooperate with her own attorney; (4) that, in spite of notice given, the guardian had failed to appear at the hearing. On that date, the court directed that the safe deposit box in the guardian's name at the Mellon National Bank and Trust Company, Butler, Pa., be sealed, that an attachment be

---

[2] We assume that this account was confirmed and the balance directed to be retained by the guardian, although the record is not clear in this respect.

issued to the sheriff to produce the guardian before the court on August 2, 1954 and that the guardian be directed to have with her at such time in court all her books, records, accounts, etc., pertaining to the ward and to show cause why she should not be held in contempt of court.

On August 2, 1954, the guardian appeared with counsel before the court and a continuance until August 30, 1954 was agreed upon to permit the guardian to file a partial accounting, the continuance being granted upon the guardian's assurance to the court that she would co-operate with her counsel and file such accounting. On August 30, 1954, the court directed the guardian to file a second and partial account and, upon the filing of that account, to resign as guardian. The court then appointed the Mellon National Bank and Trust Company as the successor guardian and directed that Eileen Marshall deliver to the Mellon Bank all the assets of the ward's estate and, upon such delivery, her bonding company would be discharged from all future liability on its bond.

On February 23, 1955, Eileen Marshall filed her second and partial account which set forth assets of $33,642.02, claimed credits of $19,237.36 and showed a balance in the estate of $14,404.66. This account was *confirmed absolutely* March 26, 1955 and no appeal therefrom was taken.

On June 3, 1955, the bonding company petitioned the court for a rule upon the guardian to show cause why she had not complied with the court's order of August 30, 1954 in its entirety. The court then issued an attachment directing the sheriff to bring the guardian before the court forthwith and granted a rule to show cause why the guardian had not complied with the court's order. On July 25, 1955, the guardian appeared before the court at which time she was released upon posting an appearance bond.

On July 27, 1955, the court adjudged the guardian in contempt and directed her (1) to deliver to the Clerk of Courts of Butler County all estate assets then in her hands; (2) to file a final account; (3) to prepare and execute assignments of interests in certain oil leases to the ward[3] and the court further directed that an audit of the guardian's account be made by a court appointed individual and an auditor to be selected by the bonding company. Sentence on the contempt charge was at that time postponed.

On February 10, 1956, the ward presented a petition to the court, setting forth, inter alia, that the guardian's second partial account, showing a balance due the ward of $14,404.66, had been confirmed absolutely on March 26, 1955, and he asked for a rule upon the bonding company to show cause why all funds due him under the guardian's second partial account should not be paid to him forthwith, with interest; the court granted this rule returnable February 21, 1956. The record fails to show the disposition of this particular rule.

On or about March 25, 1956, the ward again petitioned the court for a citation upon the guardian to file a final account within ten days or be adjudged in contempt of court and that the Dollar Savings Bank of Pittsburgh be directed to pay to the Clerk of Courts of Butler County all accounts in the guardian's name and that C. Stewart Shoemaker (the bonding company representative authorized to countersign checks) be directed to countersign the check in the possession of the Clerk of Courts. The court for such purposes made an appropriate order on that date.[4]

---

[3] At this time the ward had attained his majority.

[4] It appears from the record that the Dollar Savings Bank of Pittsburgh did send the checks for the balances held in two savings accounts in the guardian's name to the Clerk of Courts.

On July 11, 1956, the guardian's counsel petitioned the court stating that, in view of the failure of his client, the guardian, to cooperate with him, he desired to withdraw as her counsel. The court refused to permit such withdrawal and, on its own motion, directed the Clerk of the Court to cite the guardian to appear before the Court on February 10, 1957. Again, the record fails to show any disposition of this citation.

Finally, on January 23, 1957, the ward petitioned the Orphans' Court setting forth what he had received from the estate, that he had acquiesced in the accounting of the guardian as shown on the second partial account and that, of the balance shown in that account, there was still unpaid to him $4,817.18 and he requested the court for payment of that balance and the disallowance of those credits claimed by the guardian as commissions amounting to $900. The court then cited the guardian to show cause why she should not be directed to pay to her ward $4,817.18, together with $900 claimed as guardian's commissions, or in lieu thereof, to file a final account and to show cause why she should not be sentenced for contempt. On the return day of the citation, the guardian failed to appear and, on March 8, 1957, the court found that there was a shortage in the guardian's account in the amount of $4,817.18, held the guardian in contempt of court and disallowed any claim for commissions by the guardian. The bonding company excepted to this order for the following reasons: (1) that the court's direction to the guardian to pay to the ward $4,817.18, plus $900, was an adjudication of an amount owed which was not based upon a finding of fact supported by any evidence and was an *ex parte* adjudication; (2) that it was the court's failure to discharge the bonding company upon its request which subjected the bonding company to severe losses after the date of its request for discharge; (3) that the court had failed to enforce its order di-

recting an accounting to be made by a court-appointed individual and a bonding company representative and (4) the court erred in failing to take more drastic action against the guardian. On March 3, 1959, in an order reciting that, although a bench warrant had been issued for the guardian, the sheriff had never been able to apprehend her, and that, although the matter had been referred to the District Attorney's office for action, no such action had been taken, and that it then appeared that the guardian was a non-resident of Pennsylvania being a West Virginia resident, the court directed that the entire matter be referred to an auditor, that the guardian be brought into court to testify and the court continued generally the entire proceeding.

On May 29, 1959, the ward once again petitioned the court for an order under §301.(6), §721 and §751 of the Orphans' Court Act of 1951 to enter a judgment against the guardian and her surety for the sum of $4,817.18, with interest from July 21, 1955 (the date of the second partial account) together with the sum of $900 representing disallowed guardian's commissions. On July 1, 1959, the court dismissed this petition upon the ground that, the exceptions filed by the bonding company to the court's previous order of March 8, 1957 not having been disposed of, the court could not make the requested order. From that action of the court below this appeal was taken.

The instant record presents a sorry picture. The record reveals a guardian not only oblivious of the responsibility of her stewardship but defiant of the court and its decrees, a surety attempting to avert payment of the obligations on its bond by blaming the court for delay and inaction, of an overly-indulgent and patient court and of a ward who has long since reached his majority and is frustrated in every attempt to secure payment of that which rightfully belongs to him.

The record reveals that the guardian did file a second and partial account accounting for her administration of the estate up until a period approximately six months prior to the time when the ward reached his majority. This account was confirmed by the court and there appears on this record no objection to the accounting or to the figures stated therein with the exception of the credit claimed by the guardian for commissions. *As far as the record reveals, as of the date of the confirmation of that account, the balance in the hands of the guardian due to the ward was fully established.*

Subsequent thereto, certain monies and assets were turned over by the court's direction to the Clerk of Courts who, in turn, turned them over to the ward. The value of such assets is purely a mathematical computation and the difference between the value of such assets and the amount of the balance shown on the second accounting likewise is a mathematical computation. All that the ward seeks is a judgment for the amount shown by that account as due and owing to him less that which he has already received. There is no difficulty in establishing from the records of the court that which is rightfully due to the ward.

In addition thereto, the ward asks for a disallowance of any commissions to the guardian and a judgment for the amount ($900) of such commissions. That the guardian, by her conduct, has forfeited any right to such compensation for commissions, is clear beyond question: *Commonwealth Trust Company Case,* 331 Pa. 569, 582, 1 A. 2d 662; *Lewis Estate,* 349 Pa. 455, 461, 462, 37 A. 2d 559; *Kline's Estate,* 280 Pa. 41, 49, 124 A. 280; *O'Neill's Estate,* 266 Pa. 9, 14, 15, 109 A. 526. With the forfeiture of the amount ($900) of these commissions, the ward is entitled to such additional amount.

It is urged, however, that this appeal cannot lie because the order appealed from is not a final order. The order appealed from, dated July 1, 1959, refused the petition for judgment against the guardian and the bonding company on the following grounds: "an order cannot be made on the petition now before the Court for judgment for attachment execution to issue until the Court has disposed of the exceptions to the order of March 8, 1957". On March 8, 1957 the court found that there was due and owing to the ward $4,817.18 and that the guardian was not entitled to credit for commissions of $900. The bonding company filed exceptions to this order questioning the sufficiency of the record to support the court's findings, averring that the court's failure to discharge the bonding company when it had requested such discharge and the failure of the court to take penal action against the guardian had resulted in loss to the bonding company which it should not be called upon to assume. These exceptions have never been disposed of although over three years have passed since they were filed and no satisfactory reason appears of record for failure to dispose of these exceptions.

It is well established that, "unless a special right to appeal is expressly given by statute, an appeal will lie only from a definitive order, decree, or judgment which finally determines the action": *Stadler v. Mt. Oliver Borough*, 373 Pa. 316, 317, 318, 95 A. 2d 776. *Unfortunately*,[5] however, the instant order is not a definitive order ripe for review by this Court. In view of the fact that the bonding company has not been

---

[5] We state "unfortunately" because this litigation should be brought to an immediate termination. This record reveals petition upon petition, rule upon rule, order upon order, technicality upon technicality, and yet the ward still is without funds to which the court found him entitled almost six years ago when it confirmed absolutely the guardian's second account!!

heard on its exceptions to the court order of March 8, 1957, a hearing to which it is entitled, the court below properly refused the relief requested in this proceeding and its action is not subject to appeal. Our dismissal of this appeal from an interlocutory order in no manner excuses the delay in this entire matter and the court below and all the parties, in the interests of justice, *must* speedily bring to a termination this litigation and further delay will not be countenanced.

Appeal dismissed and the record remanded to the court below with the direction that a hearing be *immediately* held on the exceptions to the court order of March 8, 1957 and the matter concluded at the earliest possible moment.