Marshall Appeal.

Argued October 5, 1964. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Saul J. Bernstein,* with him *Charles Chew,* and *Bernstein and Campbell,* for appellants.

*Lee C. McCandless,* with him *McCandless & Mc-Candless,* for appellee.

OPINION BY MR. JUSTICE COHEN, November 10, 1964:

This is an appeal from orders entered by the Orphans' Court of Butler County refusing a petition for remission of the forfeiture of a recognizance bond and refusing to strike from the record the judgment based on the forfeiture. It is but another legal facet of one situation which for too many years has been causing judicial concern. See *Marshall Estate,* 403 Pa. 348, 168 A. 2d 745 (1961).

In 1945, Eileen Marshall was appointed the guardian for nine of her minor brothers and sisters-in-law. In 1954, her performance bondsman (as distinguished from her appearance or recognizance bondsmen who are petitioners in this case) alleged improprieties on the part of the guardian in performing her duties and requested the orphans' court either to relieve it of further liability on the bond or to take certain action. On August 30, 1954, the court directed the guardian to file an account and thereupon resign as guardian. It further directed her to turn over all the assets of her wards to a successor guardian which the court appointed. Upon the delivery of the assets the performance bondsman was to be relieved of further liability. The guardian filed the required account but failed to turn over the assets as directed. On petition of the performance bondsman the court issued an attachment directing the sheriff to bring the guardian before the court forthwith and granted a rule to show cause why the guardian had not complied with the court's order of August 30, 1954.

On July 25, 1955, the guardian was brought before the court by the sheriff. Upon the posting of a $5,000 appearance bond, approved by the court, the guardian was released. This bond is the subject matter of the present appeal and provided: "Know All Men By These Presents, That, whereas Employers Liability Assurance Corporation, Limited [the performance bondsman] . . .

petitioned the Orphans' Court of Butler County, Pennsylvania, for the attachment of the body of Eileen Marshall and for a decree adjudging her in contempt of compliance with a prior Order of Court.

"Now we . . . do hereby acknowledge ourselves . . . bound unto the Commonwealth . . . in the sum of . . . $5,000.00). . . .

"Now the condition of this obligation is such that if the said Eileen Marshall shall appear before the Orphans' Court . . . for adjudication on said alleged contempt at such time or times as the said Court shall fix, then this obligation shall be void, or else to remain in full force and virtue."

A hearing was set for July 27, 1955. Eileen Marshall appeared at the hearing and admitted that she had failed to comply with the August 30, 1954 order in that she had not turned over her wards' assets to the successor guardian as directed. She further admitted that there would be a deficiency in the accounts of two of her wards. On the same day the court entered its order on the contempt charge stating, inter alia, "Now, July 27, 1955, the rule is made absolute and Eileen Marshall is adjudged in contempt of this Court for failure to comply with the Order of this Court made August 30, 1954."

The order concluded with the following: "Sentence for contempt is this day postponed and bond for the appearance of Eileen Marshall is ordered continued until further Order of the Court."

Subsequently, Eileen Marshall was ordered to appear before the orphans' court on March 26, 1956— eight months after she was adjudged in contempt; but she failed to appear then and a number of times thereafter. In 1961, on petition of the performance bondsman, the court, basing its decision on these failures to appear, forfeited the appearance bond, stating simply that "the terms of the bond have not been met." The

appearance bondsmen petitioned for a cancellation or remission of the forfeiture (amended later to include a petition to strike judgment) on the grounds that the orphans' court had no right to require a recognizance bond, that the bond obligation had been fulfilled, that the procedure upon which forfeiture was based was improper, that laches barred forfeiture, and that the amount of the forfeiture had been improperly determined. Before holding a hearing on the petition the court once again ordered Eileen Marshall to appear and directed her appearance bondsmen to produce her, conditioning the remission of the bond forfeiture on her appearance. Eileen failed to appear, a hearing was held on the petition and it was refused.

In our view of the case the dispositive question is whether the appearance of Eileen Marshall on July 27, 1955, the day she was adjudged in contempt of the court's August 30, 1954 order, discharged the obligation of the appearance bondsmen or whether they also guaranteed her appearance at subsequent times. "A recognizance is a contract of suretyship and as such it is subject to the rules of construction applicable to contracts generally" *Commonwealth v. Hill*, 180 Pa. Superior Ct. 430, 432-433, 119 A. 2d 572, 573 (1956) and having ascertained the intention of the parties from the recognizance contract they must be held to no more or less than that to which they agreed.

It is true that the bond guaranteed Eileen's appearance *"at such time or times* as the . . . Court shall fix" and that she failed to appear at the times fixed by the court. (Emphasis supplied). But it is also true that this clause merely modifies the clause "for adjudication on said alleged contempt," and that Eileen did appear on July 27, 1955 and was, in the lower court's own words, "adjudged in contempt." Prima facie, therefore, as soon as Eileen had been "adjudged in contempt" everything that the appearance bondsmen had

guaranteed would happen had actually come to pass, and, accordingly, the obligation of the bond was discharged.

Appellees argue, however, that the word "adjudication" when used in an appearance bond, in the context of contempt proceedings, includes that part of the proceedings when sentence is imposed. Therefore, they contend, the bondsmen guaranteed Eileen's appearance until sentence was imposed. Although Eileen had been found in contempt sentence was postponed. Hence, appellees argue, the obligation of the appearance bondsmen continued and Eileen's subsequent failure to appear caused a breach of it.

Appellees do not cite any authority for the proposition that in contempt proceedings, where defendant has been found guilty of contempt, there is no "adjudication" until sentence has been imposed. We have, however, found general statements to the effect that in criminal proceedings bail is not discharged by a mere plea or verdict of guilty but rather that it continues until sentence is imposed. 20 A.L.R. 594, 624-627 (1922). 8 C.J.S. Bail §79g. We have also found Pennsylvania cases where bail was forfeited when defendant, although found guilty, did not appear for sentence. *Commonwealth v. Ross,* 6 S. & R. 427 (1821), *Magie's Appeal,* 1 Sadler 496 (1886), *Commonwealth v. Gardner,* 82 Pa. D. & C. 353 (1952).

Analysis of the cases from which the general proposition has apparently been distilled throws doubt upon its correctness as stated. But even when correctly stated, it is not apposite to the case at bar. In all of the cases cited above the bond was conditioned upon the defendant not departing without leave of the court, and, in all of the cases, defendant did, in fact, depart without leave and before sentence. However, *it was not defendant's departure before sentence but rather it was his departure without leave of court* that caused

a breach of his bond. Correctly stated the general proposition should be that if defendant's appearance bond is conditioned upon his remaining in court until given leave to depart and he departs without leave and before he is placed in the custody of the law, then his bond may be forfeited.

On its face, this proposition is inapplicable to the case at bar for two reasons. On the one hand, the bond in question did not contain an express condition that the defendant shall not depart without leave of court. On the other hand, defendant did have permission to leave the court. But, even if we assume that there was an implied condition that defendant not depart without leave of court and that leave to depart was given on the condition that defendant reappear when ordered, there is a more fundamental reason why the appearance bond in this case should not be forfeited. Also, it is this reason which distinguishes the case at bar from the ones where bond was forfeited when defendant did not appear for sentence. It is simply that the bondsmen cannot be said to have assumed the risk created by the court in this case. Having found Eileen Marshall guilty of contempt the court gave her leave to depart until some indefinite date in the future when it might decide to order her reappearance. The court's reasons for doing this are apparent from its own opinion on the motion to remit the forfeiture: "Following a conference in the courtroom, the guardian Eileen Marshall, agreed to cooperate and do certain things to establish the exact status of the guardian's account at issue and she was given the opportunity so to do. She agreed to file accounts required and long overdue. . . .

"It was the concensus [sic] of opinion of all present that Eileen Marshall should not then be incarcerated or have other penalty inflicted, but should be given time and opportunity to file the accounts and settle the affairs of the guardianship."

In other words, the court decided not to sentence Eileen Marshall until she had an opportunity to mend her ways. Or it may have decided not to sentence her at all if she would mend her ways. In either event, bondsmen who agree to assume the risk that a defendant will appear for "adjudication" of contempt cannot be said to have agreed that they would guarantee that a defendant who has been "adjudged in contempt" would appear for sentencing after having been given time to purge himself of his wrong.

While we need not decide the question it is not unreasonable to find that bondsmen who have guaranteed appearance for "adjudication" have thereby assumed the risk that the defendant would appear for sentence as long as that sentence follows in the ordinary course of the proceedings, i.e., immediately after being found guilty or after brief adjournment. But the risk created by allowing a defendant who has been found in contempt an undetermined amount of time in which to purge himself before he is sentenced is so much greater and different than the risk of whether defendant will show up for his trial and the immediate disposition of his case that it cannot reasonably be said to have been contemplated by the parties to a bond for appearance for "adjudication." Indeed, our Rules of Civil Procedure provide especially for attachment, sequestration and bail in the situation where a defendant who has been arrested for noncompliance with a decree desires conditional release for the purpose of performing that decree. Pa. R. C. P. 1529(c).[1] The ordinary ap-

---

[1] Rule 1529(c) provides: "A party who fails to comply with a decree may be arrested by attachment and his property sequestered. If arrested, he may, upon furnishing such bail as the court shall require, be conditionally released for the purpose of performing the decree. The attachment and sequestration shall not be dissolved until the decree has been performed and the costs of the action paid." This rule is applicable to orphans' court by virtue

pearance bond, on the other hand, given by one who is merely charged with contempt is separately provided for by statute. June 23, 1931, P. L. 925, §1(a), 17 P.S. §2047(a). This supports our contention that the risk involved is a distinct one and cannot be implied into the ordinary appearance bond.

This case is similar to *Commonwealth v. Angle*, 20 Pa. D. & C. 491 (1934). There the bail bond provided that defendant "shall be and appear at the next court of quarter sessions . . . and not depart the court without leave." The defendant appeared and was found guilty of fraudulent conversion. The court ordered the bail forfeited but to be respited if defendant paid back the funds converted within one year. In granting the petition to strike the forfeiture the court said: "The liability of bail rests upon the terms and conditions of the obligation. In this case, the recognizance requires that the defendant 'shall be and appear at the next court of quarter sessions to be holden in and for said county and not depart the court without leave.' The defendant did appear as required and did not depart until the court permitted him to leave, under certain conditions not required by the recognizance. Defendant was released for 12 months, conditioned upon his paying monthly instalments on account of the money embezzled.

"Therefore, the nature and extent of defendant's recognizance was affected in such a way as to result in an increase of risk and liability upon the bail, who

of Orphans' Court Rules §3, Rule 1 which provides that "Except where otherwise provided by a rule adopted by the Supreme Court or by an Act of Assembly, or by general rule or special order of the local Orphans' Court the pleading and practice shall conform to the pleading and practice in equity in the local Court of Common Pleas." The procedure of orphans' court for enforcing its orders is also specifically regulated by statute, August 10, 1951, P. L. 1163, §§751-756, 20 P.S. §§2080.751-2080.756.

agreed that he would appear at the next court of quarter sessions and not at the end of any stated period, such as 12 months.

"The bail, being placed in a situation which materially changes the legal nature of his obligation, is entitled to relief, and therefore the forfeiture of the bail is stricken off and the bail is discharged from any liability thereunder."

It is true that on the same day that Eileen Marshall was adjudged in contempt and her sentence was postponed the court ordered the bond for her appearance continued. But there was no finding by the lower court nor is it contended that the bondsmen agreed to such a continuance. The court cannot unilaterally change the bondsmen's bargain.

The appearance bondsmen should be relieved of any liability on the bond in question. Hence, the orders of the lower court are reversed and the case is remanded to the Orphans' Court of Butler County for the taking of such steps as are necessary to comply with this opinion.

Orders reversed and remanded.

Appellee to pay costs.