551 A.2d 573

**Marjilou VITO, Appellee,**

v.

**Salvatore VITO, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 8, 1988.

Filed Dec. 13, 1988.

Reargument Denied Feb. 6, 1989.

Robert M. Rosenblum, Stroudsburg, for appellant.

Before WIEAND, McEWEN and MELINSON, JJ.

WIEAND, Judge:

Salvatore Vito was found guilty of contempt for violating an order entered pursuant to the Protection From Abuse Act of October 7, 1976, P.L. 1090, No. 218, 35 P.S. § 10181 et seq. He was sentenced to serve a six month period of probation upon the following conditions:

1. You shall undergo an inpatient evaluation for drug and alcohol abuse at the Marworth Treatment Center in Waverly, Pennsylvania.

2. You shall refrain from any use of controlled substance or alcohol during the period of this probation. You shall be subject to random urinalysis by the Monroe County Probation Department to verify your compliance with that term of probation.

You are further directed to supply the Monroe County Probation Department with a schedule of your activities each week in advance, and you are to comply with any request they make for random urinalysis.

On direct appeal, Vito argues that the trial court refused to recognize that he was being tried for a criminal offense and accord to him the procedural safeguards accompanying such a proceeding.[1] We are constrained to agree. Therefore, we reverse and remand for a new trial.

1. The specific questions raised on appeal are stated as follows:

The Supreme Court of the United States discussed the difference between civil and criminal contempt in *Hicks v. Feiock*, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988) and held that the nature of the proceedings must be determined "from an examination of the character of the relief itself." *Id.* at ——, 108 S.Ct. at 1432, 99 L.Ed.2d at 734. The Court said:

The question of how a court determines whether to classify the relief imposed in a given proceeding as civil or criminal in nature, for the purposes of applying the Due Process Clause and other provisions of the Constitution, is one of long standing, and its principles have been settled at least in their broad outlines for many decades. When a State's proceedings are involved, state law provides strong guidance about whether or not the State is exercising its authority "in a nonpunitive, noncriminal manner," and one who challenges the State's classification of the relief imposed as "civil" or "criminal" may be required to show "the clearest proof" that it is not correct as a matter of federal law. *Allen v. Illinois*, 478 U.S. 364, 368–369 [106 S.Ct. 2988, 2992, 92 L.Ed.2d 296] (1986). Nonetheless, if such a challenge is substantiated, then the labels affixed either to the proceeding or to the relief imposed under state law are not controlling and will not be allowed to defeat the applicable protections of federal constitutional law. *Ibid.* This is particularly so in the codified laws of contempt, where the "civil" and "criminal" labels of the law have become increasingly blurred.

A. WHETHER THE APPELLANT IS ENTITLED TO A NEW TRIAL SINCE HE WAS DENIED HIS CONSTITUTIONAL DUE PROCESS RIGHT TO A FAIR TRIAL AS GRANTED BY THE CONSTITUTION OF THE UNITED STATES AND THE COMMONWEALTH OF PENNSYLVANIA.

B. WHETHER THE APPELLANT IS ENTITLED TO A NEW TRIAL SINCE THE TRIAL COURT DENIED HIM HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

C. WHETHER THE APPELLANT SHOULD BE GRANTED A NEW TRIAL SINCE THE TRIAL COURT APPLIED THE WRONG BURDEN OF PROOF AND THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE.

Instead, the critical features are the substance of the proceeding and the character of the relief that the proceeding will afford. "If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441 [31 S.Ct. 492, 498, 55 L.Ed. 797] (1911). The character of the relief imposed is thus ascertainable by applying a few straightforward rules. If the relief provided is a sentence of imprisonment, it is remedial if "the defendant stands committed unless and until he performs the affirmative act required by the court's order," and is punitive if "the sentence is limited to imprisonment for a definite period." Id., at 442 [31 S.Ct. at 498]. If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order. These distinctions lead up to the fundamental proposition that criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings, including the requirement that the offense be proved beyond a reasonable doubt. See, e.g., *Gompers, supra*, at 444 [31 S.Ct. at 499]; *Michaelson v. United States ex rel. Chicago, St. P., M. & O. R. Co.*, 266 U.S. 42, 66 [45 S.Ct. 18, 20, 69 L.Ed. 162] (1924).

*Id.* at — — —, 108 S.Ct. at 1429–1430, 99 L.Ed.2d at 731–732 (footnotes omitted).

Pennsylvania courts have also recognized and adhered to this distinction. The case of *In re Martorano*, 464 Pa. 66, 346 A.2d 22 (1975) provided the Pennsylvania Supreme Court an opportunity to review the distinction; and the Court responded by saying that judicial responses to contumacious behavior are classified

according to the dominant purpose of the court. If the dominant purpose is to prospectively coerce the contemnor to comply with an order of the court, the adjudication of contempt is civil. If, however, the dominant purpose is to punish the contemnor for disobedience of the court's order or some other contemptuous act, the adjudication of contempt is criminal.

Dominant purpose of coercion or punishment is expressed in the sanction imposed. A civil adjudication of contempt coerces with a conditional or indeterminate sentence of which the contemnor may relieve himself by obeying the court's order, while a criminal adjudication of contempt punishes with a certain term of imprisonment or a fine which the contemnor is powerless to escape by compliance.

The civil-criminal classification of contempt exists solely for determination of a contemnor's procedural rights and a court's sentencing options. Quite simply, a contemnor who will be sentenced to a determinate term of imprisonment or a fixed fine, which he is powerless to escape by purging himself of his contempt, is entitled to the essential procedural safeguards that attend criminal proceedings generally.

*Id.*, 464 Pa. at 78–80, 346 A.2d at 28–29 (citations and footnotes omitted). See also: *Fatemi v. Fatemi*, 371 Pa.Super. 101, 111–112, 537 A.2d 840, 845 (1988); *Colbert v. Gunning*, 368 Pa.Super. 28, 31, 533 A.2d 471, 472 (1987); *Bruzzi v. Bruzzi*, 332 Pa.Super. 346, 351–353, 481 A.2d 648, 651–652 (1984); *Grubb v. Grubb*, 326 Pa.Super. 218, 222–223, 473 A.2d 1060, 1062 (1984); *Kramer v. Kelly*, 265 Pa.Super. 58, 63–64, 401 A.2d 799, 801–802 (1979).

In *Cipolla v. Cipolla*, 264 Pa.Super. 53, 398 A.2d 1053 (1979), the Superior Court discussed indirect criminal contempt proceedings and described the procedural safeguards to which a defendant is entitled. It said:

Criminal contempt is a crime in every fundamental respect. *Codispotti v. Pennsylvania*, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974); *Bloom v. Illinois*, 391

U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). *In re Johnson,* 467 Pa. 552, 359 A.2d 739 (1976).

Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both. In the words of Mr. Justice Holmes:

"These contempts are infractions of the law, visited with punishment as such. If such acts are not criminal, we are in error as to the most fundamental characteristic of crimes as that word has been understood in English speech." *Gompers v. United States,* 233 U.S. 604, 610, 34 S.Ct. 693 [695], 58 L.Ed. 1115 (1914).

Criminally contemptuous conduct may violate other provisions of the criminal law; but even when this is not the case convictions for criminal contempt are indistinguishable from ordinary criminal convictions, for their impact on the individual defendant is the same. Indeed, the role of criminal contempt and that of many ordinary criminal laws seem identical—protection of the institutions of our government and enforcement of their mandates.

*Bloom, supra,* 391 U.S. at 201, 88 S.Ct. at 1481–2. In *Michaelson v. U.S. ex rel. Chicago, St. P., M. & O. R. Co.,* 266 U.S. 42, 66, 45 S.Ct. 18, 20, 69 L.Ed. 162 (1924) the court stated, "[T]he fundamental characteristics of both [crimes and criminal contempts] are the same."

Recognizing the inherent criminal nature of this type of contempt, the legislature has enshrouded the proceeding with appropriate procedural safeguards. Thus, where one is accused of indirect criminal contempt, he shall enjoy the normal rights as to admission to bail, Judicial Code, Act of July 9, 1976, P.L. 586, No. 142 and amended by Act of April 28, 1978, No. 53 (42 Pa.C.S.A. § 4135); cf. *In re Marshall's Estate,* 416 Pa. 64, 204 A.2d 243 (1964); rights to be notified of the accusation and time to prepare a defense, Judicial Code, § 4135, *supra; In re Galloway,* 480 Pa. 1, 389 A.2d 55, 57 (1978) (Roberts, J., concurring); *Commonwealth v. Garrison,* 478 Pa. 356, 386 A.2d 971

(1978); and the right to a speedy and public trial by impartial jury, Judicial Code. [*Commonwealth v.*] *Charlett* [481 Pa. 22, 391 A.2d 1296, 1298 (1978)] *supra,* (declaring statutory right to trial by jury in indirect criminal contempt proceeding is also guaranteed by the Sixth Amendment to the U.S. Constitution); *Altemose* [*Construction Co. v. Building and Construction Trades Council of Philadelphia and Vicinity et al.,* 449 Pa. 194, 296 A.2d 504] *supra,* (declaring the several mandates of former 17 P.S. § 2047 are but "declaratory of the constitutional guarantees of due process of law"); *Commonwealth v. Fletcher,* 441 Pa. 28, 269 A.2d 727 (1970). Additionally, the alleged contemnor is entitled to the assistance of counsel, *Commonwealth v. Crawford,* 466 Pa. 269, 352 A.2d 52 (1976); *Commonwealth v. Abrams,* 461 Pa. 327, 336 A.2d 308 (1975) and may only be found guilty if every element of the crime is proven beyond a reasonable doubt, *In re Johnson, supra,* 467 Pa. 552, 359 A.2d 739 (1976). In short, the accused in such a proceeding "is entitled to the essential procedural safeguards that attend criminal proceedings generally." *In re Martorano,* 464 Pa. 66, 80, 346 A.2d 22, 29 (1975).

*Id.,* 264 Pa.Superior Ct. at 58–60, 398 A.2d at 1055–1056 (footnotes omitted). See also: *Altemose Construction Co. v. Building and Construction Trades Council of Philadelphia and Vicinity et al.,* 449 Pa. 194, 221, 296 A.2d 504, 519 (1972) (Opinion in Support of Affirmance, Pomeroy, J.), *cert. denied,* 411 U.S. 932, 93 S.Ct. 1901, 36 L.Ed.2d 392 (1973); *Knaus v. Knaus,* 387 Pa. 370, 375, 127 A.2d 669, 672 (1956); *L & J Equipment Co., Inc. v. United Mine Workers of America,* 339 Pa.Super. 51, 56–58, 488 A.2d 303, 306–307 (1985); *Schnabel Associates, Inc. v. Building and Construction Trades Council of Philadelphia and Vicinity, AFL–CIO,* 338 Pa.Super. 376, 387, 487 A.2d 1327, 1333 (1985); 42 Pa.C.S. § 4136.

■ In the instant case, appellant was accused of violating a court order entered pursuant to the Pennsylvania

Protection from Abuse Act.[2]  He was accused via petition filed by his wife, containing averments that he had violated the protection order by acts of domestic violence.  This petition was filed consistently with Section 10 of the Protection from Abuse Act which provides that "[u]pon violation of a protection order or a court approved consent agreement the court may hold the defendant in indirect criminal contempt and punish him in accordance with law."  35 P.S. § 10190(a), as amended.  In requiring that defendant be found in contempt and punished according to law, it will be observed, the legislature did not in any way attempt to alter or circumvent the rights of a defendant in criminal contempt proceedings.[3]

■  The trial court, following hearing, found that appellant had violated the court's order and was in contempt of court.  The court thereupon sentenced appellant to probation and imposed the conditions hereinbefore recited.  The sentence was not conditional upon appellant's failure to purge himself of contempt.  Appellant was powerless to escape the court's sentence by compliance with the protection order.  As such, it was punitive and not coercive.  Because the sentence was punitive and was intended to vindicate the authority of the court, it was criminal in

**2.**  The order was as follows:

AND NOW, February 10, 1987, the respondent having specifically denied any wrongdoing, but the parties having agreed to the entry of an Order, it is ordered as follows:

1.  The respondent, Salvatore Vito, is directed to refrain from any physical abuse, harassment or threats thereof toward the petitioner, Marjilou Viot, [sic] and their children.

2.  Exclusive possession of the marital premises at RD 7, Box 7312, Stroudsburg, Pennsylvania is granted to the petitioner, and the respondent shall not enter upon said premises, except for the purpose of picking up or dropping off the children, or upon specific invitation of the petitioner.

3.  This Order shall remain in effect for a period of one year from today's date.

4.  A copy of this Order shall be served upon the Stroud Township Police Department, which shall constitute sufficient warrant for the arrest of the respondent in the event he should violate this Order.

**3.**  The statute provides, however, that there is no right to trial by jury on charges of indirect criminal contempt arising under the Protection from Abuse Act.  See: 35 P.S. § 10190(b).

nature and not civil. Such a sentence for contempt cannot properly be imposed unless the defendant has been afforded the protections which the federal and state constitutions require in criminal proceedings.

Despite objections repeatedly made by appellant's counsel, the trial court refused to acknowledge that the proceedings were criminal in nature and apply constitutional safeguards. Instead, the trial judge announced that the hearing was a "domestic matter" in which he would allow the parties to have their say and then "do something fair and equitable." When appellant objected to testimony pertaining to acts not alleged in the petition on grounds that there had been no prior notice,[4] the following occurred:

THE COURT: Mr. Anders, stop interrupting the witness.

MR. ANDERS [Appellant's Counsel]: Your Honor, I want a continuing objection to all this because I had no prior notice of this alleged in the petition. I'm here to defend a criminal proceeding, and now we're getting into allegations which I have no notice of.

THE COURT: For your information, it is not a criminal proceeding.

MR. ANDERS: It is a criminal proceeding.

THE COURT: One of the consequences of this is your client can be held in indirect criminal contempt.

MR. ANDERS: And my client has the same rights as anyone else in any criminal proceeding, and I have case law on it, your Honor.

THE COURT: Your objection is noted and overruled.

At another point in the proceedings, appellant's counsel objected to the testimony of the petitioning wife when she attempted to describe an event which, according to her own admission, she had not observed. In response to this objection, the following occurred:

---

**4.** A defendant in a criminal contempt proceeding is entitled to "reasonable notice of the specific contempt charges against him." *Commonwealth v. Mayberry,* 459 Pa. 91, 106, 327 A.2d 86, 94 (1974).

THE COURT: Mr. Anders, just a moment. Let me interrupt a minute. Just a moment. Just a moment. I want to explain everything to these people here.

This is a domestic matter. This matter is of great importance to these two people and I want to hear it and try to do something fair and equitable. I do not want continuous interruptions. If this party has something to say which does not relate things she knows, or she is not competent, you made objections; they were noted. We will not consider them to have great weight, but this constant interrupting is disruptive and I want it to stop.

MR. ANDERS: For the record, as I said before, your Honor believes it is not a criminal proceeding, but my client can be put in jail. She told the Court what happened, and then said she didn't see it. I think I can have an objection if she testifies to something she didn't see.

THE COURT: That goes to the weight, Mr. Anders. You're constantly interrupting, and it's very offensive to the witness and I instruct you to stop it. You have a continuing objection to any matter she testifies to which is not based on her personal observations, all right? Do you understand that?

MR. ANDERS: No, I don't, your Honor.

THE COURT: Well, you ought to; so, just be seated.

█ Appellant argues that the trial court, because of its failure to recognize that it was hearing a criminal matter, applied an improper burden of proof. The law is clear that in criminal contempt proceedings, guilt must be proved beyond a reasonable doubt. *Hicks v. Feiock, supra; Cipolla v. Cipolla, supra.* Whether the court required something less than proof beyond a reasonable doubt, however, is not certain. The trial court has not disclosed the burden of proof which it applied. It is abundantly clear from the record, however, that the trial court repeatedly misperceived the nature of the proceedings which it was hearing. Under these circumstances, the trial court may well have misperceived also the burden of proof which had to be met before appellant could be found guilty of criminal contempt.

In any event, because the trial court failed to understand the nature of the proceedings and thereby failed to accord to appellant the constitutional protections required in criminal proceedings, a new trial is required.

Reversed and remanded for a new trial. Jurisdiction is not retained.