618 A.2d 992

**COMMONWEALTH of Pennsylvania**

v.

**Ricky Lee AIKINS, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 20, 1991.

Filed Jan. 5, 1993.

16

Robert A. Cinpinski, Kittanning, for appellant.

Frederick L. John, II, Asst. Dist. Atty., Kittanning, for Com., appellee.

Before BECK, TAMILIA and HESTER, JJ.

TAMILIA, Judge:

Appellant, Ricky Lee Aikins, takes this appeal from judgment of sentence imposed February 26, 1991. The issue in this case is whether a conviction for burglary is precluded by a prior conviction on an indirect criminal contempt charge, arising out of violation of a Protection From Abuse (PFA) Order, when the burglary was committed on the premises protected by the PFA Order.

On December 13, 1984, following a hearing on a PFA Act petition filed due to marital difficulties between appellant and his estranged wife, an Order was entered giving Charlene Aikins (wife) exclusive possession of the parties' marital residence. On March 5, 1985, police were summoned to the residence (a mobile home) where they discovered appellant underneath the home attempting to splice into Charlene's telephone wires. Appellant was charged with interception of oral communications, burglary and criminal trespass. Charlene then filed a petition for contempt arising from appellant's

violation of the PFA Order. At the hearing on May 17, 1985, appellant was found to be in indirect criminal contempt of the PFA Order and sentenced to serve six (6) months in jail. Prior to trial on the criminal charges, appellant filed a motion to dismiss on double jeopardy grounds. The trial court denied the motion and following trial and conviction, appellant was sentenced on February 26, 1991 to serve nine (9) months to three (3) years imprisonment for burglary. This appeal followed.

In *Commonwealth v. Allen*, 506 Pa. 500, 486 A.2d 363 (1984), *cert. denied*, 474 U.S. 842, 106 S.Ct. 128, 88 L.Ed.2d 105 (1985), our Supreme Court held "prosecution on the substantive criminal charge after a finding of contempt in violating the injunction against abuse does not violate double jeopardy." *Id.* at 514, 486 A.2d at 370. However, the United States Supreme Court recently articulated changes in double jeopardy jurisprudence in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). The *Grady* Court held:

> [T]he Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charges in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted.... The critical inquiry is what conduct the state will prove, not the evidence the state will use to prove that conduct.

*Id.* at 521, 110 S.Ct. at 2093, 109 L.Ed.2d at 564. The test as to whether contempt is civil or criminal turns on whether the person can escape imprisonment by doing some act of compliance to purge the contempt (civil) rather than be sentenced to punish the wrongdoing without redemption (criminal). *See Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968).

We find the rationale recently employed by this Court in *Commonwealth v. Warrick*, 415 Pa.Super. 385, 609 A.2d 576 (1992) (*Warrick II* ), is equally applicable to this case although the facts are different. There a prisoner, after judgment of sentence was entered, ran from the court room to avoid incarceration. After capture, he was immediately returned to

the court, where, in a summary procedure, he was sentenced to a term of six (6) months on the direct criminal contempt. Subsequently, he was charged, convicted and sentenced to imprisonment for escape. Our Court initially reviewed that conviction in *Commonwealth v. Warrick,* 344 Pa.Super. 611, 497 A.2d 259 (1985) (*Warrick I* ), and held double jeopardy was not implicated and that the contempt did not bar *Warrick's* subsequent trial for escape. Most recently in *Warrick II,* the double jeopardy issue was again reviewed by this Court in light of the *Grady* double jeopardy ruling handed down subsequent to decision in *Warrick I.* We held in *Warrick II* that *Grady* was inapposite to that case because a summary criminal contempt is by its nature a different type of offense than other crimes, e.g. escape, and continued to rely on *Allen, supra. Allen* rested on the fact that criminal contempt consists of acts tending to lessen the dignity or impede the process of the court, thus criminal contempt proceedings are instituted to vindicate the authority of the court and must be viewed as a necessary tool for deterring abuse of the judiciary. This function demands that a judge not be required to consider the consequences of foreclosing subsequent criminal prosecution when sanctioning a contemnor for his actions. *Id.*

In *Warrick II* we pointed out that *"Grady* [n. 7] explicitly recognizes that an exception to its double jeopardy analysis may exist where the government is unable to proceed on the more serious of two charges for various administrative or procedural reasons." *Warrick II, supra* at 389, 609 A.2d at 578. Also, the United States Supreme Court has severely limited the scope of *Grady* by its ruling in *United States v. Felix,* —— U.S. ——, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992). In *Felix,* the Supreme Court found no double jeopardy when two separate prosecutions were brought for conspiracy and the conduct upon which the substantive offenses were brought. It held that "a mere overlap in proof between two prosecutions does not establish a double jeopardy violation" *Id.* at ——, 112 S.Ct. at 1382, 118 L.Ed.2d at 34. The *Warrick II* Court also found that "[u]ntil either the Pennsylvania Supreme Court or the United States Supreme Court clearly

indicates that a conviction of direct criminal contempt triggers double jeopardy protections for additional criminal charges based on the same conduct, we cannot grant the type of relief sought by appellant." *Id.* at 392, 609 A.2d at 580. Although the case before us involves *indirect* criminal contempt, we find the *Warrick II* Court's reasoning apt.

Applying the above principles to this case, it is clear beyond question that *Grady* does not and was never intended to prevent the effective implementation of the PFA Act in imposing contempt penalties, albeit they are criminal in nature, and involve the same facts as a contemporaneous substantive offense, when the alternative is to deny prosecution of the substantive offense. *Grady* could not make it more clear, as reaffirmed in *Felix,* that double jeopardy may not deny the right to prosecute the substantive offense because procedural or administrative exigencies require more expeditious handling of the summary offense. This was correctly interpreted in *Warrick II* to require the prosecution of the direct criminal contempt faced by the court long before the escape charge could be prosecuted. It applies just as clearly to prosecution of the indirect criminal contempt of a PFA violation before the burglary charges could be prosecuted in this case. PFA legislation was enacted to curb domestic violence which has taken a tremendous toll on women and children, particularly, in our society. This legislation requires that in several areas we apply exigent procedures and measures which are usually violative of due process. These involve matters such as notice, opportunity to be heard, temporary dispossession of one party to marital or entireties property, summary support and emergency custody procedures, and hearings in the domestic relations division rather than criminal division of the criminal contempt proceedings. This has been done, supported by rulings as to its constitutionality, because it is deemed necessary to do so to protect the victims of abuse from serious harm and/or loss of life. In this case, to wait until the usual procedures, which are circumscribed by criminal due process requirements to the fullest, for prosecution for burglary are implemented and the case tried on the contempt with the

20

burglary would mean a delay of one to two years in some judicial districts. By then the victim could be dead, as a burglary charge, with overcrowded prisons would surely result in early release until trial. The contempt violation of the PFA Order, however, can be handled immediately and expeditiously to serve its stated purpose, to protect the life and safety of the victim. The contempt action and proceeding protects not only the dignity and expectation of the court to assure the orderly administration of justice, but also protects the life of the victim, which society has come to recognize requires the extraordinary procedures employed under the PFA Act.

Logic compels the distinction between these cases and the usual case implicated by the double jeopardy rulings. As *Allen* has stated in analyzing *United States v. Mirra,* 220 F.Supp. 361, (S.D.N.Y.1963):

'Assume that *Mirra's* projectile had received more accurate a propulsion and had scored on its intended target—the Assistant United States Attorney. And assume further the grisly and morbid fact that the Assistant United States Attorney had sustained an injury which ultimately proved fatal. To sustain *Mirra's* claim would, in effect, grant a summary contemnor immunity from a homicide prosecution—an unconscionable result. Merely to state the case suffices to reveal what must perforce be the answer to *Mirra's* theory.'

[*Mirra* ] at 366. We hold that *the same implied answer, no double jeopardy, is required in this case.*

*Allen, supra* at 514, 486 A.2d at 370, quoting *Mirra, supra* (emphasis added).

Justice Larsen, in his Concurring Opinion in *Allen,* addresses the preventive nature of the PFA as follows:

I join the majority opinion. I write separately to emphasize that the contempt provisions of the Protection From Abuse Act are available and intended not only to punish an abusive spouse for past abusive behavior, but are also available and intended to physically restrain (i.e., jail) an abusive spouse in order to prevent future occurences [sic] of

abuse. There is much peace of mind in knowing that the abuser cannot reach the object of the abuse.

*Id.* at 516, 486 A.2d at 371 (footnote omitted). In this case, without the immediate contempt action against the contemnor, exacerbated by the arrest, upon release from jail awaiting the burglary trial, the next trip to the victim's home could have been fatal to her. If ever double jeopardy does not apply, it is in this case or cases involving PFA proceedings in general. Our decision today is in accord with, and guided by, our recent decision in *Commonwealth v. Manney,* 421 Pa.Super. 244, 617 A.2d 817 (1992), a case with similar facts and the same resolution.

Based on the foregoing, we affirm the trial court's judgment of sentence and hold there is no basis upon which this panel can overrule *Allen* or *Warrick,* and that *Grady* has not worked a fundamental change in the manner we interpret the double jeopardy provisions of the Federal and State Constitutions in relation to PFA contempt actions.

Judgment of sentence affirmed.

BECK, J., files a dissenting opinion.

BECK, Judge, dissenting.

In the instant case appellant Ricky Lee Aikins challenges his convictions for burglary and criminal trespass on the ground that the prosecution was based on the same conduct which underlay a previous conviction for indirect criminal contempt for violating a Protection from Abuse order. Appellant argues that the subsequent burglary and criminal trespass prosecution violated his constitutional guarantee against double jeopardy.[1] Based on the recent United States Supreme Court pronouncement in *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), which I find to be dispositive, I conclude that the subsequent criminal conviction was barred on double jeopardy grounds. Therefore, I would reverse the judgments of sentence and discharge appellant.

---

1. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides, in relevant part, that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb".

Appellant and his estranged wife, Charlene Aikins, were married in 1979 and separated in 1984. As a result of escalating marital difficulties, Charlene Aikins filed a petition under the Protection from Abuse Act and, following a hearing, an order was entered on December 13, 1984. Pursuant to the court's order, Charlene Aikins was granted exclusive possession of the marital residence, which was a mobile home in Apollo, Pennsylvania.

On March 5, 1985, the police were summoned to Charlene Aikens' trailer where they discovered appellant underneath the mobile home. He was there with the apparent intention of intercepting his wife's telephone calls. Appellant had connected a telephone receiver to his wife's telephone system by splicing wires and attaching the phone to the wires beneath the trailer. The phone, wires and alligator clips were found under the trailer along with appellant when the police arrived. The area entered by appellant was used by the family for storage and was surrounded by skirting which was secured to the trailer by screws.

Appellant was charged with interception of oral communications, burglary and criminal trespass. In addition, Charlene Aikins filed a petition for contempt as a result of appellant's violation of the protection from abuse order. A hearing on the contempt petition was held on May 17, 1985. Appellant was found in indirect criminal contempt of the protection from abuse order and was sentenced to serve six months in jail. Prior to trial on the criminal charges, appellant filed an omnibus pretrial motion seeking dismissal on double jeopardy grounds. The trial court refused and found that "punishment for contempt for violation of a Protection from Abuse Order does not contravene the double jeopardy provisions of the constitution ... so as to prevent a subsequent prosecution for Burglary and Criminal Trespass based on essentially the same facts as the finding of contempt for violation of the Protection from Abuse Order."

Appellant was tried on February 12–13, 1986, and convicted by a jury of burglary, criminal trespass and interception of oral communications. Sentencing occurred on February 26,

1991.[2]  The court imposed a nine month to three year term of imprisonment for burglary.[3]  This appeal followed.

In finding that the criminal prosecution for burglary was not barred by the previous indirect contempt conviction, the trial court relied on the Pennsylvania Supreme Court case, *Commonwealth v. Allen*, 506 Pa. 500, 486 A.2d 363 (1984), *cert. denied* 474 U.S. 842, 106 S.Ct. 128, 88 L.Ed.2d 105 (1985). The Commonwealth, too, in its brief to this court relies on *Allen* for the argument that a previous conviction for indirect criminal contempt "never bars subsequent criminal charges based wholly or partially on the same conduct".  Were it not for significant recent changes in double jeopardy jurisprudence, I would have to agree that *Allen* would permit the instant burglary prosecution despite the previous contempt conviction.  However, in light of the United States Supreme Court's most recent articulation of the standard by which double jeopardy claims must be judged, *Grady v. Corbin, supra,* I am constrained to find that *Allen* is not controlling and that appellant's burglary conviction must be reversed.

*Allen*'s fact pattern largely resembles the instant case. The defendant in *Allen* had been ordered by the court, by means of a protection from abuse order, to refrain from physically abusing, striking or harassing his estranged wife. While the order was in effect the defendant in *Allen* violated it by forcibly entering his wife's home and assaulting her.  As a result of these actions, a criminal complaint against defendant was filed on charges of simple assault and trespass.  Wife also petitioned the court to hold defendant in contempt of the protection order.  Defendant was arraigned on the contempt charge, failed to post bail and remained in jail for the next

2.  The trial court noted the inordinately long time between trial and sentencing and suggested that difficulty in obtaining a transcript and preparing for post-trial motions was to blame.

3.  The trial court found that criminal trespass merged with burglary for sentencing purposes.  The court also noted that 18 Pa.C.S. § 3502(d) prohibits conviction for both burglary and the offense which the accused intended to commit therein if the latter is not a felony of the first or second degree.  Since the wire interception offense was a third degree felony, the court vacated the sentence it previously had imposed on the interception charge.

nine days, when the contempt hearing was held. After the hearing, defendant was found in contempt of the protection order and fined. Several days later, the defendant in *Allen* was also charged with raping his wife during the same criminal episode described above. All criminal charges were consolidated. The defendant moved to quash the three criminal informations on the ground that the subsequent prosecution was barred by double jeopardy. The trial court denied the motion. The Superior Court affirmed the trial court on the charges of criminal trespass and rape, and reversed on simple assault finding that double jeopardy barred the prosecution of the latter offense.

The Supreme Court found that the defendant could be tried on all three offenses and that double jeopardy would not be offended. Preliminarily, the Supreme Court rejected the Commonwealth's argument that the contempt proceeding was not criminal in nature and that, therefore, the double jeopardy protection was not implicated. The Supreme Court unequivocally held in *Allen* that "the finding of contempt involved a proceeding which was criminal in nature, and is thus a proceeding with implications for double jeopardy analysis." *Commonwealth v. Allen*, 506 Pa. at 511, 486 A.2d at 368.

The analysis that the Supreme Court used to determine whether successive prosecutions violated the double jeopardy guarantee was based on the then-current standard for evaluating double jeopardy claims. Citing *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the Supreme Court concluded that when the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one for double jeopardy purposes is whether each provision requires proof of a fact which the other does not. *Commonwealth v. Allen*, 506 Pa. at 510–11, 486 A.2d at 368. Applying this test, the Supreme Court had no trouble finding that "the charges of rape and criminal trespass are not barred by jeopardy because they both involve proof of a fact which the finding of contempt does not." The court concluded that "[r]ape and criminal trespass ... are not

merely separate offenses in one particular or other, but are wholly different offenses from indirect criminal contempt." *Id.* at 511–12, 486 A.2d at 368–369. The Supreme Court found the analysis with respect to the simple assault and contempt more troublesome, presumably because the contempt involved an assault and because the protection order enjoined Allen from engaging in physically abusive conduct. Nevertheless, the Supreme Court found that "the indirect criminal contempt proceeding involves elements not necessary to a finding of simple assault, even though assaultive behavior was involved in the contempt." *Id.* at 514, 486 A.2d at 370 (footnote omitted). The *Allen* court concluded:

> Defendant could have wilfully violated the court order by any number of actions, many of which would not have involved assault, or even physical contact or presence. Moreover, the contempt order's purpose was protection of the court's dignity and enforcement of its order, not punishment for criminal assault.....
>
> *We hold, therefore, that under the Blockburger test, indirect criminal contempt and simple assault do contain the requisite "separate elements" and vindicate different interests. Therefore, prosecution on the substantive criminal charge after a finding of contempt in violating the injunction against abuse does not violate double jeopardy.*

*Id.* (citations omitted) (emphasis added).

In 1990, the United States Supreme Court decided *Grady v. Corbin, supra,* and altered the approach this court must take toward the resolution of double jeopardy issues. Briefly, the charges in *Grady v. Corbin* arose from an automobile accident in which the defendant, Thomas Corbin, received two traffic tickets after his car crossed the center line of the highway, striking two oncoming cars. The accident caused the death of one person and serious injuries to another. The traffic citations charged Corbin with driving while intoxicated and failing to keep to the right of the median.

Shortly after the accident the district attorney's office began a grand jury investigation into possible homicide charges against Corbin. Nevertheless, in the meantime, Corbin ap-

peared before a town justice and pled guilty to the traffic offenses. The judge was unaware of the fatality or the pending homicide investigation when he accepted the pleas and imposed sentence which consisted of fines and license revocation. Two months later, the grand jury indicted Corbin on charges of reckless manslaughter, second-degree vehicular homicide, criminally negligent homicide, and third degree reckless assault.

Corbin challenged the indictment on double jeopardy grounds. The New York Court of Appeals found that because the state conceded that the prosecution for homicide and assault would rely upon the prior traffic offenses to establish elements of the greater offenses, double jeopardy barred the subsequent prosecution. The state appealed to the United States Supreme Court, which affirmed.

The Court stressed the dangers inherent in successive prosecutions and concluded that the application of the traditional *Blockburger* analysis alone would not sufficiently protect a defendant against the burdens of multiple trials. Thus, the Court articulated an expanded, two-prong approach to the resolution of double jeopardy claims. The Court explicitly stated that the "subsequent prosecution must do more than merely survive the *Blockburger* test." *Grady v. Corbin, supra,* 495 U.S. at 521, 110 S.Ct. at 2087, 109 L.Ed.2d at 564. The further inquiry mandated after *Grady v. Corbin* was explained by the Court as follows:

> [T]he Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted.... The critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct.

*Id.* (footnote omitted).

It is clear, therefore, that after *Grady v. Corbin* a new "constitutional mandate" regarding double jeopardy protection is applicable. *See Commonwealth v. Labelle,* 397 Pa.Super. 179, 191, 579 A.2d 1315, 1321 (1990). *See also Commonwealth*

*v. Yingling,* 407 Pa.Super. 151, 595 A.2d 169 (1991); *Commonwealth v. Adams,* 406 Pa.Super. 493, 594 A.2d 727 (1991); *Commonwealth v. Butt,* 406 Pa.Super. 526, 594 A.2d 743 (1991); *Commonwealth v. Kline,* 405 Pa.Super. 412, 592 A.2d 730 (1991). Precedent which resolved double jeopardy challenges based on a *Blockburger* analysis alone, like *Commonwealth v. Allen,* can no longer dictate the result when this constitutional challenge is raised.

Before I begin to analyze the instant case under the current double jeopardy standard I first put to rest any argument that because this case involves a contempt proceeding pursuant to the Protection from Abuse statute, an exception to double jeopardy protection somehow exists. This clearly is not the case. It is beyond dispute that indirect criminal contempt is criminal in nature.[4] The sanctions imposed are determinate and unconditional and intended as punishment to vindicate the authority of the court. The term of imprisonment imposed is not dependent upon future compliance with the court's order. The critical question is "not whether the contemnor is physically required to set foot in a jail but whether the contemnor can avoid the sentence imposed on him, or purge himself of it, by complying with the terms of the original order." *Hicks v. Feiock,* 485 U.S. 624, 635 n. 7, 108 S.Ct. 1423, 1431 n. 7, 99 L.Ed.2d 721, 733 n. 7 (1988). *See also Vito v. Vito,* 380 Pa.Super. 258, 551 A.2d 573 (1988); *Colbert v. Gunning,* 368 Pa.Super. 28, 533 A.2d 471 (1987). Constitutional protections accompany this criminal proceeding, including the guarantee against double jeopardy. *Commonwealth v. Allen, supra; Vito v. Vito, supra.*

In fact the United States Supreme Court has stressed:

Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both. In the words of Mr. Justice

---

**4.** Indirect criminal contempt is committed outside the presence of the court and requires a hearing and presentation of evidence which must be accompanied by due process safeguards. *See Schnabel Associates, Inc. v. Building and Const. Trades Council of Philadelphia and Vicinity, AFL–CIO,* 338 Pa.Super. 376, 487 A.2d 1327 (1985).

Holmes: "These contempts are infractions of the law, visited with punishment as such. If such acts are not criminal, we are in error as to the most fundamental characteristic of crimes as that word has been understood in English speech."

Criminally contemptuous conduct may violate other provisions of the criminal law; but even when this is not the case convictions for criminal contempt are indistinguishable from ordinary criminal convictions, for their impact on the individual defendant is the same. Indeed, the role of criminal contempt and that of many ordinary criminal laws seem identical—protection of the institutions of our government and enforcement of their mandates.

*Bloom v. Illinois*, 391 U.S. 194, 201, 88 S.Ct. 1477, 1481–82, 20 L.Ed.2d 522, 528 (1968).

It is also important to note, particularly for purposes of double jeopardy analysis, the crucial distinctions between direct and indirect criminal contempt. This is particularly so because a recent decision of this court has explored the applicability of double jeopardy principles in the direct contempt context and found *Grady v. Corbin* inapplicable. *Commonwealth v. Warrick*, 344 Pa.Super. 611, 497 A.2d 259 (1985). In part, the *Warrick* court found an exception to *Grady* in the direct contempt context due to what it described as "[t]he necessity of providing a court with the immediate means to protect its dignity and its ability to properly conduct judicial proceedings...." I agree that this has long been held to be a distinguishing feature between direct and indirect contempt and has served to place direct contempt out of the double jeopardy context. While the rationale of *Warrick* excludes double jeopardy considerations in cases of direct criminal contempt, the rationale of the instant case clearly makes double jeopardy considerations necessary in cases of indirect criminal contempt.[5]

5. The majority opinion correctly notes that a recent decision by this court held that prosecution for *indirect* criminal contempt does not bar subsequent prosecution for underlying criminal offenses arising out of the same conduct. *Commonwealth v. Manney*, 421 Pa.Super. 244, 617 A.2d 817 (1992). The *Manney* opinion does not provide any rationale

As discussed above, indirect criminal contempt occurs outside the presence of the court. Direct contempt is committed in the court's presence. The supreme court has explained the distinction between direct and indirect contempt as follows:

Direct contempt is obstruction by conduct, word or deed in the presence of the court and is a summary offense. It may be sanctioned as civil or criminal contempt depending upon the purposes sought by the court. It is summary because its proofs are evident; the authority and orderly process of the court are directly confronted upon its open record and the evidence is plain and usually self-accusing.

Indirect contempt is obstructive conduct committed beyond the court's presence. Such conduct is not self-evident or self-accusatory as when one refuses to do a thing and proof of its commission is required. Therein lies the main difference between contempt in the court's presence and conduct beyond. When one is charged with indirect contempt those charging such contempt are put to the usual proofs required to convict for any charge, including the right to trial by jury. This is so because the court has no direct, immediate proof of something beyond its immediate view.

*Crozer-Chester Medical Center v. Moran*, 522 Pa. 124, 130–31, 560 A.2d 133, 136 (1989).

Thus, in cases of direct criminal contempt, because the court is personally possessed of all the facts necessary to conclude that a contempt has occurred in its presence, the court can impose summary punishment. No notice is given, no charges are filed and no trial is held. As I noted above, indirect criminal contempt proceedings are accompanied by the same procedural safeguards normally applicable to criminal trials and are adversarial in nature. Therein lies the critical distinction for fulfilling the purposes of the double jeopardy clause. For these reasons, courts which have been asked to decide

for extending the *Warrick* exception to cases of indirect criminal contempt. It merely concludes in a footnote that "the court's resoning [sic] [in *Warrick* is] plainly applicable to the matter before us." I acknowledge but disagree with the result reached by this court in *Manney*.

whether the imposition of sanctions following a direct contempt has implications for double jeopardy have found that double jeopardy does not bar subsequent prosecutions stemming from the same conduct.

For example, in *United States v. Mirra,* 220 F.Supp. 361 (S.D.N.Y.1963), the defendant flung the witness chair upon which he had been sitting at the Assistant United States Attorney prosecuting the case. The trial court summarily held Mirra in contempt of court "[f]or committing such a violent outrage upon the dignity and decorum of the court." 220 F.Supp. at 362. Shortly thereafter Mirra was indicted for assaulting a federal officer, based upon the chair-throwing episode. Mirra challenged the indictment, arguing that the intended assault prosecution and the direct contempt were based on the same incident and that he was being prosecuted twice for the same offense. The district court, in a decision which has since served as a guidepost for subsequent resolution of this issue, concluded that the defendant's argument must fail. First, the court stressed the significance, indeed necessity, of the direct contempt power. Without it, "courts would find it most difficult to control the disorderly and the violent who respect neither the laws enacted for the vindication of public and private rights nor the officers charged with the duty of administering them." *Id.* at 364–365. Accordingly, the district court found it inconceivable that "judges could become ineffectual in restoring judicial decorum for fear that a contempt conviction would raise a constitutional bar to a subsequent prosecution of the same act." *Id.* at 365–366.

Moreover, and more importantly for purposes of the double jeopardy discussion, the *Mirra* court found that "a criminal prosecution arising out of and subsequent to summary contempt conviction does not offend the policy underlying the protection against Double Jeopardy." *Id.* at 366. The double jeopardy protection seeks to avoid harassment of an accused through successive trials and the compelled necessity of having to marshall the resources in his defense more than once for the same criminal act. However, the *Mirra* court concluded that:

Successive trials are not involved because the effective remedy against a contempt committed in the court's presence is for the court immediately and summarily to punish the contumacious conduct. . . . And since an adversary type proceeding does not precede the swift imposition of a summary contempt conviction, a criminal prosecution on a charge arising out of the contumacious conduct is the first trial-type harassment to which the contemnor is made subject. In the present posture of the law, a rebellious person does not have the option, and wisely so, of having the issue of his alleged contumacy determined by a trial-type hearing. . . . . [T]he summary contemnor is not subjected to the harassment which the Double Jeopardy protection seeks to prevent.

*United States v. Mirra,* 220 F.Supp. at 366.

Many other courts have adopted a similar approach. For instance, in *United States v. Rollerson,* 449 F.2d 1000 (D.C.Cir.1971), Chief Judge Bazelon adopted the *Mirra* analysis and found that a defendant who was summarily punished for direct contempt for throwing a water pitcher at the prosecutor could later be prosecuted for assault as a result of the same act. The court concluded, based on the above-quoted language from *Mirra* that: "The contempt proceeding did not amount to a separate hearing or proceeding of the kind which invokes the Double Jeopardy Clause." *United States v. Rollerson,* 449 F.2d at 1004–1005. *See also People v. Totten,* 118 Ill.2d 124, 113 Ill.Dec. 47, 514 N.E.2d 959 (1987) (prosecution for aggravated battery following and arising out of adjudication for direct criminal contempt when defendant struck the state's attorney at sentencing, did not offend double jeopardy clause); *People v. Heard,* 208 Ill.App.3d 278, 153 Ill.Dec. 46, 566 N.E.2d 896 (1991) (defendant, who was held in direct criminal contempt for representing himself to be his brother, could subsequently be prosecuted for obstructing justice without violating double jeopardy protection).

Thus, there clearly is precedent and persuasive rationale to conclude that the double jeopardy protection is not brought into play in cases of penalties imposed for direct criminal

contempt. The same cannot be said for indirect criminal contempt, particularly in light of *Grady* and the principles announced therein.

In addition, it cannot be argued successfully that the Protection from Abuse Act reflects the legislature's intention to permit successive prosecutions when criminal charges arise from conduct which also constitutes a violation of a protection order.[6] While I do not dispute the salutary purposes of and genuine need for the measures of the protection from abuse statute, I also stress that the legislature cannot, via statutory enactment, abrogate constitutional double jeopardy protection.

As the foregoing discussion makes plain, in order to survive the double jeopardy test announced in *Grady v. Corbin, supra,* it is insufficient to conclude, as the trial court did here, that the offenses of indirect criminal contempt and burglary are not the same offense because each requires proof of a fact not required by the other. Instead, the focus must be on the *conduct* underlying the contempt conviction and whether the Commonwealth necessarily relied on the same conduct to prove the burglary.

In the instant case it is clear that the conduct which constituted the violation of the protection order and was the basis for the contempt conviction, i.e. the knowing and unauthorized entry onto the trailer in the exclusive possession of Charlene Aikens, is the same conduct upon which the Commonwealth depended to prove essential elements of the burglary offense. This fact is undisputed by the trial court and the Commonwealth. Thus, under *Grady v. Corbin, supra,* I conclude that double jeopardy barred the burglary prosecution because in order to prove the burglary the Commonwealth established conduct which also constituted the previously convicted offense.

6. Section 6117 of the Protection from Abuse Act, 23 Pa.C.S. § 6101 et seq., provides:

Unless otherwise indicated in this chapter, a proceeding under this chapter shall be in accordance with applicable general rules and shall be in addition to any other available civil or criminal remedies.

Our research has revealed several cases from other jurisdictions which have reached the same conclusion in essentially similar fact patterns. In *State v. Magazine*, 302 S.C. 55, 393 S.E.2d 385 (1990), the defendant was convicted of aggravated assault after he had been sanctioned for the same conduct by way of a criminal contempt conviction for the violation of a protection order issued by family court. Relying on *Corbin*, the Supreme Court of South Carolina held that the State proved the same conduct at defendant's assault trial as had been used to prove contempt during the previous proceeding in family court. Therefore, the court concluded that the assault prosecution violated double jeopardy.

Likewise in *State v. Kipi*, 72 Haw. 164, 811 P.2d 815 (1991), the defendant pled no contest to a criminal contempt charge for violation of a family court protection order which forbid him to enter his ex-girlfriend's house or to threaten her and her roommates. The court sentenced Kipi to five months in jail on the contempt conviction, which was based on the defendant's forcible entry into his ex-girlfriend's house, during which he threatened her and her roommates. Kipi argued that the previous contempt barred the State's effort to prosecute him for burglary and terroristic threats based on the same criminal episode.

The Supreme Court of Hawaii acknowledged that, under the traditional *Blockburger* test, the State would have to prove facts to establish burglary and threats which are different from and additional to those it used to prove the criminal contempt charge. *State v. Kipi*, 72 Haw. at 171, 811 P.2d at 819. However, the court in *Kipi* stressed that in *Grady v. Corbin*, "the Supreme Court broadened the scope of double jeopardy." *Id.* Given the *Corbin* test, the Hawaii court concluded, "Kipi cannot be prosecuted for burglary and terroristic threatening. The conduct that the State would use to prove those crimes is the identical conduct that the family court considered when it accepted Kipi's no contest plea.... Kipi's entering of the [the complainant's] house and his threats to her and two of her housemates was the exact conduct that

constituted the offense of contempt with respect to the family court's protective order." *Id.*

Finally, in a carefully reasoned opinion by the en banc District of Columbia Court of Appeals in *United States v. Dixon*, 598 A.2d 724 (D.C.App.1991) (en banc), *cert. granted,* —— U.S. ——, 112 S.Ct. 1759, 118 L.Ed.2d 422 (1992), the court reached the same conclusion relying on *Corbin* and citing *Magazine* and *Kipi.* *Dixon* involved consolidated appeals presenting the same issue, that is, whether previous contempt adjudications barred subsequent criminal prosecutions based on the same conduct which led to the contempt conviction. The *Dixon* court held that *Grady v. Corbin* is "controlling and that it requires us to sustain the claim of double jeopardy in both cases." *Dixon*, 598 A.2d at 730. The court found that the conduct underlying the contempt convictions in each of the consolidated appeals was indisputedly "the very same conduct for which the government now seeks to try them in the two pending criminal cases." *Id.* at 731. Therefore, the court concluded that "*Grady v. Corbin* compels us to hold that those cases cannot be tried, now or ever." *Id.* Further, the Court of Appeals rejected the argument that jeopardy did not bar the subsequent prosecutions because the contempt proceeding was initiated by private parties, not by the government. The court correctly emphasized that the double jeopardy protection focuses on "the impact of the trial on the defendant", not on the identity of the prosecuting party. *Id.* at 732.

*See also Burge v. Kentucky,* (No. 90–CA–002233–MR, Ky. Ct.App. March 27, 1992); *State v. Vanselow,* 61 Ohio Misc.2d 1, 572 N.E.2d 269 (1991); *State v. Mojarro,* 169 Ariz. 1, 816 P.2d 260 (Ariz.App.1991), all of which rely on *Grady v. Corbin* to reach the same conclusion I do today.

Lastly, in part because of this court's opinion in *Warrick,* discussed above, and in part for purposes of completeness, I address the significance of the recent Supreme Court case of *United States v. Felix,* —— U.S. ——, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992). In *Felix,* the Supreme Court limited the reach of *Grady* in the context of multi-layered, continuing

criminal enterprise prosecutions. In *Felix*, the defendant had been tried and convicted first in Missouri in federal district court for attempting to manufacture methamphetamine. The charge was based upon the defendant's acquisition of the base chemicals necessary for the manufacture which had been delivered to the defendant in Joplin, Missouri. The "deal" which proved the charge in the first trial was orchestrated through the DEA and one of its informants. Subsequently, defendant was charged in federal court in Oklahoma with both substantive and conspiracy counts for operating a plant in Beggs, Oklahoma, at which he made methamphetamine. Two of the nine overt acts alleged to have been accomplished in connection with the conspiracy charges involved defendant's acquisition of the chemicals in Missouri, i.e., the conduct which was used to prove the previous Missouri conviction. The United States Court of Appeals held that the double jeopardy clause barred the prosecution of the defendant for the conspiracy charge because two of the overt acts supporting the conspiracy were based on conduct which formed the basis of the previous Missouri prosecution. The Court of Appeals concluded that this result was dictated by *Grady v. Corbin.*

The United States Supreme Court reversed. Although the Supreme Court conceded that there was "considerable justification" to read *Grady* to support the conclusion that the conspiracy prosecution was barred, the Supreme Court refused to expand *Grady* into the conspiracy context. The Supreme Court concluded *Grady* did not intend to disturb long-established authority which insisted on the distinction between conspiracy to commit an offense and the offense itself. Similarly, the Court noted that a long line of cases has refused to apply a double jeopardy bar to prosecutions for a continuing criminal enterprise offense after a previous conviction for one of the predicate offenses. Moreover, the Supreme Court cited approvingly the analysis of the dissenting judge on the Court of Appeals who noted that the word "conduct" in *Grady* was modified by the phrase "that constitutes an offense for which the defendant has already been prosecuted". Therefore although the same "conduct" may have been neces-

sary to prove both the Missouri and Oklahoma offenses, the "conduct" itself did not constitute an offense for which defendant Felix had been previously convicted. *See Commonwealth v. Yingling,* 407 Pa.Super. 151, 595 A.2d 169 (1991), for a similar analysis.

In my view, *Felix* was specifically limited to the context in which it was decided, i.e., a continuing criminal enterprise involving a subsequent conspiracy prosecution. *Felix* can not be read to have eliminated the *Grady* standard and reinstituted a double jeopardy analysis based on *Blockburger* alone. Perhaps, in the future, this will be the course the Supreme Court adopts. I am aware that the United States Supreme Court has agreed to hear the *Dixon* case, cited above, in order to review the proper scope of the double jeopardy protection in cases involving a prior contempt conviction for conduct which also constitutes violations of other criminal provisions. Until such time, if ever, as the Supreme Court reinstructs on the correct interpretation of the protection against double jeopardy, I conclude that *Grady v. Corbin* controls the result here. Appellant's trial for burglary violated his fundamental guarantee against double jeopardy.